RICHARD T. DUNLAP, Private First Class U. S. Army,
Petitioner
v
CONVENING AUTHORITY Combined Arms Center and
COMMANDANT, U. S. Disciplinary Barracks Fort Leavenworth,
Kansas Respondents

Miscellaneous Docket No. 74-16

June 21, 1974

*Robert E. Davis,* Esquire, argued the cause for Petitioner. With him on the brief were *Colonel Arnold I. Melnick, Captain Dennis D. Daly,* and *Captain Lawrence I. Wagner.*

*Captain Keith H. Jung* argued the cause for Respondents. With him on the brief were *Lieutenant Colonel Ronald M. Holdaway* and *Lieutenant Colonel Donald W. Hansen.*

## OPINION OF THE COURT

QUINN, Judge:

The petitioner contends he has been so prejudiced by inordinate delay in proceedings subsequent to the invalidation of his conviction for various offenses in violation of the Uniform Code of Military Justice that the charges against him should be dismissed.

In December 1972, a court-martial convened at Bamberg, Germany by the Commanding General, 1st Armored Division, convicted the petitioner of the charges and sentenced him to a bad-conduct discharge, total forfeitures, and confinement at hard labor for 3 years. Pending review by the convening authority, he was initially confined in Germany, then was transferred to the United States for confinement in the United States Disciplinary Barracks, Fort Leavenworth, Kansas. He arrived at the Disciplinary Barracks on January 23, 1973.

About 10 weeks after the petitioner's incarceration in the Disciplinary Barracks, the staff judge advocate completed his post-trial advice to the convening authority. In it, he noted certain deficiencies but deemed them correctable by modification of the findings of guilty to accord with petitioner's pleas of guilty. He also noted that as the petitioner had requested enlisted persons on the court-martial, under Article 25(c) of the Uniform Code of Military Justice, 10 U.S.C. § 825(c), at least one-third of the court membership had to consist of members drawn from the enlisted ranks; in fact, the enlisted membership was below that percentage. To correct this error, the staff judge advocate recommended a rehearing on the sentence. The convening authority adopted these recommendations. Apparently because he had transferred the petitioner to the United States, he did not direct a rehearing before a court-martial convened by him. Instead, he forwarded the record to the Disciplinary Barracks with a request that it assume jurisdiction over the case for the sentence rehearing. The record was received on May 1, 1973, by the Commanding General, Combined Arms Center and Fort Leavenworth, the general court-martial authority for the Disciplinary Barracks. On June 27, he returned the record to the 1st Armored Division "without action."

According to Fort Leavenworth, the court-martial that tried petitioner "was improperly constituted for all purposes" so that the findings of guilty as well as the sentence were invalid. Leavenworth was willing to conduct "a full rehearing" if the convening authority would promulgate a new action providing for such hearing. First Armored Division accepted Leavenworth's recommendation. It withdrew the previous action and substituted another which declared that petitioner's court-martial "did not have jurisdiction to try" him because it was "not legally constituted." A rehearing "before another court-martial to be hereafter designated" was ordered. Again the record was sent to Fort Leavenworth, with a request for assumption of jurisdiction. This submission was received on October 15, 1973.

On November 6, petitioner filed in the United States District Court for the District of Kansas a petition for dismissal of the charges against him and release from confinement for violation of his right to a speedy trial. A rule to show cause, returnable in 20 days, was issued. It contained no stay of proceedings on the part of the Government. On November 20, Fort Leavenworth referred three of the four original charges against petitioner to trial before a court-martial convened by it. Six days later, on the last day allowed by the rule to show cause, the Government filed a return to petitioner's application in the United States District Court. In part, it contended that the petitioner had not exhausted the remedies available to him "through military legal process." Subsequently, the charges came on for trial before the court-martial convened at Fort Leavenworth, but trial was postponed to allow the United States District Court to act on petitioner's application to that court for relief from prosecution and release from confinement. Later, a pretrial conference on the latter application was held, but further proceedings in the United States District Court were stayed until this Court could act on a proposed petition for similar relief. On February 25, the present petition was filed in this Court.

Delay by the convening authority in acting on the record of conviction by a court-martial has been the subject of critical comment for a number of years. In 1970, this Court found it necessary to provide relief against such delay. See Annual Report of U. S. Court of Military Appeals and the Judge Advocates General of the Armed Forces and the General Counsel of the Department of Transportation, 1971, at 9. By 1972, the problem had become so exacerbated that the Court and the legal representatives of the services jointly called for positive "action to assure that the accused is afforded the speediest possible justice consistent with due process." Annual Report, 1972, at 2.

Government counsel acknowledge the general interest in speedy disposition of courts-martial cases, but they contend that in cases of unreasonable delay by the convening authority in acting on a conviction, we have limited relief to "removal of the impediment" and to directing "completion of the appellate processes," with deferment of consideration of whether the delay was prejudicial to the accused "until the case is reviewed" on appeal. Rhoades v Haynes, 22 USCMA 189, 190, 46 CMR 189, 190 (1973). *Rhoades,* and other cases of its genre, however, recognize that "extraordinary case[s]" justify extraordinary relief. *Id.* More importantly, our earlier cases in this area have proceeded on the unarticulated assumption that action by the convening authority on a record of conviction is the equivalent of appellate review, and such time "is not generally included for purposes of calculating the period of delay in prosecution." United States v Bishton, 463 F2d 887, 890 (DC Cir 1972). We have, however, recognized that the convening authority has "hybrid" functions. United States v Sonnenschein, 1 USCMA 64, 71, 1 CMR 64, 71 (1951). Some of his powers are of the kind associated with appellate review, but he has others affecting the findings of guilty and sentence that have the attributes of a trial court.

In the federal civilian criminal justice system, finality of verdict and sentence is established in the trial court. It has been held that sentence is an essential part of the trial so that delay in its imposition "may cause a deprivation of the right to a speedy trial." United States v Sherwood, 435 F2d 867, 868 (10th Cir 1970), *cert denied,* 402 US 909 (1971); see also Rule 32(a), Fed R Crim P. In military law, the ultimate legal effect of the findings of guilty determined by the court-martial and the sentence imposed by it depends upon the action of the convening authority. Opinion 250, 452, Digest of Opinions of The Judge Advocate General of the Army, 1912–1940, § 403(1) (1942). In his sole discretion, for any or no reason, he can completely nullify the court's findings of guilty and sentence, or he can approve only such part of it as he desires. Article 64, UCMJ, 10 USC § 864; United States v Massey, 5 USCMA 514, 18 CMR 138 (1955). In considering whether to disapprove the action of the court-martial, he can even go outside the record of trial. Finally, review by appellate authorities of the record of conviction can only be as to "findings and sentence approved" by him. Articles 66 and 67, UCMJ, 10 USC §§ 866 and 867. In significant ways, therefore, the functions of the court-martial and those of the convening authority in the determination of guilt and in the imposition of sentence are so connected that they can be regarded as representing, for the purpose of speedy disposition of the charges, a single stage of the proceedings against the accused. *Cf.* United States v Sonnenschein, supra.

Article 10 of the Uniform Code provides that when an accused is arrested or confined prior to trial, "immediate steps shall be taken . . . to try him or to dismiss the charges and release him." To effectuate this congressional command for speedy disposition of a case, we vivified "a presumption of an Article 10 violation . . . when pretrial confinement exceeds three months." United States v Burton, 21 USCMA 112, 118, 44 CMR 166, 172 (1971). The interrelationship between the court-martial trial and the convening authority's action gives arguable color to a construction of Article 10 that includes the convening authority's action as one of the steps required in the trial of the accused. However, we need not decide that point. Assuming Article 10 applies only to proceedings through trial, the failure of the Uniform Code or

the Manual for Courts-Martial to condemn directly unreasonable delay by the convening authority in acting on the record of trial does not mean that relief against such delay is unobtainable.

Congress has commanded timeliness of proceedings not only for the pretrial stages of the courts-martial processes and the trial, but also in the appellate process. It has expressly enjoined this Court to act upon a petition for review "within 30 days of receipt thereof." Article 67(c), UCMJ. Thus, Congress has left no doubt that it desires that all proceedings in the military criminal justice system be completed as expeditiously as the circumstances allow. This Court is obligated to preserve and protect the integrity of its mandate for timely justice. See Collier v United States, 19 USCMA 511, 42 CMR 113 (1970); Gale v United States, 17 USCMA 40, 37 CMR 304 (1967). In United States v Tucker, 9 USCMA 587, 589, 26 CMR 367, 371 (1958), we pointedly said: "There may be good reason for . . . delay in the appellate processes . . . . Unexplained delays of the kind presented here should not be tolerated by the services, and they will not be countenanced by this Court."

■ Years of experience have demonstrated the need for a guideline as to the timeliness of the convening authority's action when the accused is continued or placed in arrest or confinement after conviction by the court-martial. See Manual for Courts-Martial, United States, 1969 (Rev), paragraph 21d; Reed v Ohman, 19 USCMA 110, 41 CMR 110 (1969). We deem it appropriate that this guideline be the same as that applicable when the accused is in arrest or confinement before trial, as was provided in United States v Burton, supra at 118, 44 CMR at 172. To paraphrase *Burton,* 30 days after the date of this opinion, a presumption of a denial of speedy disposition of the case will arise when the accused is continuously under restraint after trial and the convening authority does not promulgate his formal and final action within 90 days of the date of such restraint after completion of trial. In the language of Burton, "this presumption will place a heavy burden on the Government to show diligence, and in the absence of such a showing the charges

should be dismissed." *Id.* See also United States v Marshall, 22 USCMA 431, 47 CMR 409 (1973); *cf.* United States v Johnson, 23 USCMA 91, 48 CMR 599 (1974).

Eleven months elapsed in this case between the petitioner's conviction in December 1972 and Fort Leavenworth's re-reference of the charges to trial in November 1973. Deferment of the presumption of unreasonableness of time frees the Government from the "heavy burden" of proof required to overcome it, but freedom from that burden does not absolve the Government from responsibility for keeping the petitioner "under the cloud of an unliquidated criminal charge for an indeterminate period." Klopfer v North Carolina, 386 US 213, 227 (1967) (concurring opinion).

Government counsel concede that the delay was "attributable to the time involved in a determination of the scope" of the rehearing. They argue that the time required to resolve the matter was reasonable in view of the necessity for the successive reviews by the commanders in Germany and Fort Leavenworth and for the transmission of the reviews between them. Such circumstances are indeed relevant to whether the Government has proceeded with reasonable dispatch. United States v Winston, 21 USCMA 573, 45 CMR 347 (1972). However, when separation of command and problems of communication result from the Government's own conduct, they are merely explanation, not excuse. See United States v Gaines, 20 USCMA 557, 43 CMR 397 (1971).

In an earlier period, Army regulations prohibited transfer of an accused to the Disciplinary Barracks before promulgation of the action of the convening authority. AR 190-4, paragraph 1-3b(2)(b), June 1969. The prohibition was eliminated in January 1973. DA Message 152100Z, January 1973. Since then, we have observed numerous cases in which, as here, the accused is transferred from the court-martial command to the Disciplinary Barracks while the convening authority still has the record under consideration. The transfer may relieve the convening authority from the pressures of dealing effectively with a convicted

accused, but it frequently places the Disciplinary Barracks in the position of not being able to process the accused because of uncertainty as to the ultimate degree of his criminality and the ultimate limits of his sentence. An affidavit by the Director of Classification of the Disciplinary Barracks, which is part of the petitioner's application, indicates that until the convening authority's action is received at the barracks, a detained prisoner, such as the petitioner, is "not scheduled for . . . initial clemency hearings" and is "not considered for clemency and restoration to duty in the same time frame as are adjudged and sentenced prisoners."

It will be recalled that petitioner arrived at the Disciplinary Barracks on January 23, 1973. On March 12, 1973, allegedly at his request, the Disciplinary Barracks wrote to the convening authority. It represented that it "urgently needed" a copy of the general court-martial order which is issued on promulgation of the convening authority's action, MCM, paragraph 90, in order to process the petitioner "for classification and clemency." If the convening authority did not know the consequences of delay on his part before he received this message, he could not close his eyes to them after he received it. The Disciplinary Barracks specifically pointed out that "undesirable delays" could jeopardize the legal rights of the accused, as well as impair its function. A second message, which referred to the March message, was sent to the convening authority on April 12, 1973. Although the convening authority's initial action is dated April 7, apparently its means of transmission was such that it did not reach the Disciplinary Barracks until after it sent its second message.

Strangely, notwithstanding its own expressed concern about "undesirable delays," the Disciplinary Barracks took almost 3 months to respond to the convening authority's request that it assume jurisdiction over the case. As noted earlier, on June 27, it returned the record "without action," but indicated its willingness to take the case if the findings of guilty as well as the sentence were set aside. Stranger still, is the length of time the convening authority took to consider this development. Although he had twice been reminded of the deleterious effects of the absence of a final action, he did nothing until September 6. On that date, he promulgated a new action which adopted the recommendation of the Disciplinary Barracks for a new trial. For an unexplained reason, the action was not forwarded until September 15; it was not received at the Disciplinary Barracks until October 15. Despite Leavenworth's review of the entire record in June, it was not until November 19 that its staff judge advocate submitted the advice required by Article 61 of the Uniform Code. On November 20, revised charges were referred to trial.

Nowhere in the various pleadings filed by the Government before us does it appear that, after invalidation of petitioner's conviction, any competent authority determined that the circumstances then prevailing justified petitioner's confinement pending disposition of the charges by the Disciplinary Barracks. See Article 13, UCMJ; DeChamplain v United States, 22 USCMA 211, 46 CMR 211 (1973). On the contrary, the Government concedes that at all times since his arrival at the Disciplinary Barracks, the petitioner's status was that of a "detained" prisoner.

The Government urges us to attribute to petitioner responsibility for at least part of the delay in regard to his "retrial or release from confinement." We perceive no merit in its contention. The two notices from the Disciplinary Barracks to 1st Armored Division were initiated at petitioner's request. In our opinion, these requests were tantamount to protests against the delay by the convening authority. Similarly, petitioner's application to the United States District Court in October 1973 is in our view, a protest not only against the delay but also as he indicated, a protest against his "detainment in the United States Disciplinary Barracks" because he then stood "unconvicted of any military offenses" and should not be so confined. The Government's return to the petition in the United States District Court denied the allegation as to confinement, but it presented no evidence to justify petitioner's detention as within the single exception

to the Army's prohibition against "confinement of detained prisoners in disciplinary barracks . . . pending their trial by court-martial." AR 190-4, paragraph 1-3a(3), June 1969. The pretrial advice of the staff judge advocate noted that the petitioner's performance of duty and conduct previous to his trial were "Excellent," and that the petitioner had no previous conviction by court-martial and no punishment under Article 15, but he did not indicate whether, despite those circumstances, petitioner's continued confinement was "required." AR 190-37, paragraph 2-6a, June 1972. In addition, the advice did not indicate that, under the last-cited regulation, the petitioner could only be "temporarily confined in the disciplinary barracks . . . pending determination of place of restraint" because his conviction had been set aside. The Fort Leavenworth convening authority merely "approved" his staff judge advocate's recommendations as to the charges and referred them to trial by a general court-martial convened by him.

■ The matters presented by the petitioner and not disputed by the Government convince us that the delay in the proceedings against the petitioner subsequent to his trial was unreasonable; that the petitioner did not contribute to the delay and he made repeated and timely protests about it; and that at least since April 7, 1973, the Government has detained the petitioner in a place of confinement and under conditions of confinement that it has not justified as allowable by law. We conclude that petitioner is entitled to extraordinary relief to preserve the integrity of the courts-martial system and to protect him against further deprivation of his liberty and rights under the Uniform Code. Accordingly, we direct that a writ of prohibition issue prohibiting and restraining the respondents from requiring the petitioner to stand trial on the charges now pending before the court-martial convened by the Commanding General, Combined Arms Center and Fort Leavenworth, and we direct that the court-martial proceedings be discontinued and the charges be dismissed.

Senior Judge FERGUSON concurs.

■ 140

DUNCAN, Chief Judge (dissenting):

I, like the other members of the Court, am confounded by my observation of many cases where a convening authority's action has been inordinately delayed. We have grappled with both the evil and apparent evil which either directly results from or spins off this delay. The case at bar spotlights an extreme example of the problem. Like the plurality, I would like to arrange a rule that would militate against such unreasonable delay and at the same time preserve the high quality of military justice and the orderly procedures necessary to achieve that end. I fear the rule the Court today announces may go a long way to achieve the former but at a high expense to the latter. I respectfully dissent.

There is a marked dissimilarity between pretrial delay and delay in a convening authority's action and the harm that may result from each. Appreciating the fact that in a sense "the functions of the court-martial and those of the convening authority in the determination of guilt and in the imposition of sentence are so connected that they can be regarded as representing, for the purpose of speedy disposition of the charges, a single stage of the proceedings against the accused," significant basic differences are apparent. Looking to the basics of American jurisprudence, the disdain of pretrial delay has received enormous constitutional, statutory, case law and court rule support. On the other hand, the ire for post-trial delay has been largely words, not action.

Confinement before trial of one who is presumed innocent is particularly onerous; even more so in the military where there is no provision for bail. When a trial is delayed, the quality of justice attainable may suffer; as time passes witnesses are often less available and the evidence less fresh. A person in pretrial confinement is further hobbled in his personal efforts in defense. It is these matters that persuaded this Court to rule as it did in United States v Burton, 21 USCMA 112, 44 CMR 166 (1971). Notwithstanding the subtle idea that a trial is incomplete until the convening authority acts, the critical reason for the *Burton* rule's existence are not present

after an accused pleads guilty or is found guilty beyond a reasonable doubt. Recognition that a trial is not complete until the convening authority acts does not alter his function which is essentially review of a conviction and sentence. What the Court does today is provide a means where a person found guilty beyond a reasonable doubt in an error-free hearing may escape any sanction.

Turning now to the majority's fashioning of a 90-day rule, I am reluctant, under these circumstances, to decide that 3 months is a more appropriate time than 2 months, 4 months, or some other period. Although the desire for a time limit within which a convening authority must act was mentioned by counsel, the issues as to a certain time or the proficuousness of such a rule were not specifically briefed and argued.

Lastly, I'm concerned with the matter of the tribunal which will litigate the convening authority's delay issue. The guideline established by the Court presumes a denial of a speedy disposition if the convening authority fails to act "within 90 days of the date of such restraint after completion of trial." As in Burton, the presumption is rebuttable. See also United States v Marshall, 22 USCMA 431, 47 CMR 409 (1973). In certain instances litigating the issue may require factfinding. In my experience factfinding at the appellate level utilizing multiple affidavits is most often an unsatisfactory substitute for an evidentiary hearing with confrontation and cross-examination of witnesses. To place the litigation of such matters before the extremely busy Courts of Military Review or this Court may well have the effect of only substituting one brand of delay for another. In the absence of a procedure for the issue to be litigated before the trial courts, I am uneasy with any new burden at the appellate level of this system.

In accord with United States v Gray, 22 USCMA 443, 47 CMR 484 (1973), and United States v Timmons, 22 USCMA 226, 46 CMR 226 (1973), I remain of the opinion that "[w]hatever reason might exist to deplore post-trial delay generally . . . [I am] loathe to declare that valid trial proceedings are invalid solely because of delays in the criminal process after trial." 22 USCMA at 228, 46 CMR at 228.

The petitioner, as I view it, has not demonstrated that his present confinement while awaiting trial amounts to an abuse of his commander's discretion. It is now for the trial courts to determine whether pursuant to United States v Burton, supra, and United States v Marshall, supra, the petitioner has been in pretrial confinement without trial for a period of time which will entitle him to a presumption of a violation of Article 10, Uniform Code of Military Justice, 10 USC § 810. If so, and the presumption is not rebutted, his case should be dismissed. I would deny the relief requested.