UNITED STATES

v.

Timothy W. THOMAS, 459 25 9365 Lance Corporal (E–3), U.S. Marine Corps.

NMCM 93 02019.

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 1 Nov. 1991.

Decided 9 Feb. 1995.

LT Alice B. Lustre, JAGC, USNR, Appellate Defense Counsel.

LT Philip Sundel, JAGC, USNR, Appellate Defense Counsel.

Maj Laura L. Scudder, USMC, Appellate Government Counsel.

Before ORR and REED, Senior Judges, and KEATING, J.

REED, Senior Judge:

The appellant was tried in October and November of 1991 by a special court-martial composed of officer members. Contrary to his pleas, he was convicted of two specifications of making a false official statement, seven specifications of larceny, six specifications of uttering bad checks, and false swearing, in violation of Articles 107, 121, 123a, and 134, respectively, of the Uniform Code of Military Justice [UCMJ], 10 U.S.C. §§ 907, 921, 923a, 934. He was sentenced to confinement for 6 months, forfeiture of $502.00 pay

per month for 6 months, reduction to pay grade E–1, and a bad-conduct discharge. On 11 August 1993, the convening authority [CA] approved the sentence as adjudged, some 21 months after the date of trial.

The appellant has now raised five assignments of error.[1] The fifth assignment of error has previously been decided against the appellant's contentions and will not be discussed further. *United States v. Mitchell*, 39 M.J. 131 (C.M.A.), *cert. denied,* —— U.S. ——, 115 S.Ct. 200, 130 L.Ed.2d 131 (1994).

In his first assignment of error the appellant argues that the military judge erred in denying his request for an independent handwriting analyst to assist him in preparing for cross-examination of the Government's expert. We disagree. The following facts are pertinent to a discussion of this issue.

Prior to trial, the appellant's trial defense counsel asked the Government for an expert to examine the signatures on the checks the appellant was alleged to have uttered. The defense counsel specifically asked that Mr. Manuel Gonzales, a forensic document examiner, be made available, although he indicated that a suitable Government expert would also be acceptable. Counsel's specific request for Mr. Gonzales was denied, but the request for a handwriting analysis to be done by an expert was approved. Mr. Mark Gernandt of the Naval Investigative Service Forensic Science Laboratory performed the requested analysis. He concluded that the appellant signed the questioned checks. The Government contends that this portion of the

appellant's argument is moot since expert assistance to the defense was provided. We agree. *See United States v. Davis,* 22 M.J. 829 (N.M.C.M.R.1986). Based on the results of the examiner's analysis, the Government then decided to call him as a prosecution witness.

Subsequently, but again prior to trial, the trial defense orally asked the convening authority for authority to hire Mr. Gonzales to assist the defense in cross-examining the Government expert. The convening authority orally denied this request indicating the defense counsel had shown no necessity for such an expert.

After trial commenced on 16 October 1991, the appellant renewed his request to the convening authority, this time in writing, for an expert document examiner, specifically Mr. Gonzales, to do two things: (1) to conduct an independent analysis of the documents that the NIS expert had already examined; and (2) to assist the defense in preparing to meet the Government expert's testimony "through educated cross-examination." The convening authority denied this request. Once the convening authority had denied the request for assistance, the trial defense counsel renewed the request for expert assistance with the military judge. Record at 14. At the time of this request, defense counsel had not spoken with the Government expert [Record at 17], but citing *United States v. Burnette,* 29 M.J. 473 (C.M.A.1990), and *United States v. Murphy,*

1. I. THE MILITARY JUDGE ERRED IN DENYING APPELLANT'S REQUEST FOR EXPERT ASSISTANCE IN THE FORM OF AN INDEPENDENT HANDWRITING ANALYST TO ASSIST IN PREPARING FOR CROSS–EXAMINATION OF THE GOVERNMENT'S EXPERT.

II. APPELLANT WAS DENIED SPEEDY POST–TRIAL REVIEW OF HIS CASE WHERE THE STAFF JUDGE ADVOCATE'S REVIEW WAS NOT SERVED UPON THE DEFENSE UNTIL NEARLY A YEAR AFTER APPELLANT'S TRIAL, AND THE ADDENDUM RECOMMENDATION WAS NOT DONE UNTIL NINE MONTHS AFTER COMMENTS BY THE SUBSTITUTE DEFENSE COUNSEL WHICH RAISED DENIAL OF SPEEDY REVIEW.

III. THE RECORD FAILS TO SUPPORT A FINDING OF GUILT BEYOND A REASONABLE DOUBT TO CHARGES I AND II, AND ADDITIONAL CHARGES I AND II, WHERE AP-

PELLANT AND VERONICE COX *DID* OBTAIN A MARRIAGE LICENSE AND GO THROUGH A CEREMONY BUT THE LICENSE DOES NOT APPEAR TO HAVE BEEN PROPERLY FILED FOLLOWING THAT CEREMONY.

IV. THE RECORD FAILS TO SUPPORT A FINDING OF GUILT BEYOND A REASONABLE DOUBT TO CHARGE III AND ADDITIONAL CHARGE III, WHERE APPELLANT REPORTED HIS CHECKS STOLEN, AND NO EYE–WITNESSES WERE CALLED TO TESTIFY THAT IT WAS, IN FACT, APPELLANT WHO UTTERED THE CHECKS IN QUESTION.

V. THE JUDGE ADVOCATE GENERAL OF THE NAVY'S PREPARATION OF NAVY–MARINE CORPS COURT OF MILITARY REVIEW JUDGES' FITNESS REPORTS VIOLATES APPELLANT'S RIGHT TO AN IMPARTIAL JUDICIAL FORUM. (Citation omitted.)

23 M.J. 310 (C.M.A.1987), the defense counsel indicated that little showing of necessity was required.

■ However,

[t]he servicemember bears the burden of demonstrating the necessity for the expert assistance he requests. There are three aspects to showing necessity. First, why the expert assistance is needed. Second, what would the expert assistance accomplish for the accused. Third, why is the defense counsel unable to gather and present the evidence that the expert assistance ₅would be able to develop. In particular, the defense must show what it expects to find; how and why the defense counsel and staff cannot do it; how cross-examination will be less effective without the services of the expert; how the alleged information would affect the Government's ability to prove guilt; what the nature of the prosecution's case is, including the nature of the crime and the evidence linking him to the crime, and how the requested expert would otherwise be useful.

*United States v. Allen,* 31 M.J. 572, 623–24 (N.M.C.M.R.1990) (citations omitted). This the trial defense counsel failed to do. He had not interviewed the Government's expert; he had done but cursory research into the area of handwriting analysis;[2] he could not show that the expert he desired disagreed in any way with the Government's expert; he could not show that there were legitimate divergent scientific views in the area; nor could he show what any expert assistance would accomplish for the accused. Record 20–33.

[A] defendant must demonstrate something more than a mere possibility of assistance from a requested expert; due process does not require the government automatically to provide ... defendants with expert assistance upon demand. Rather a fair reading of these precedents [*Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985); *Ake v. Okla-*

*homa,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985) ] is that a defendant must show the trial court that there exists a reasonable probability both that an expert would be of assistance to the defense and that denial of assistance would result in a fundamentally unfair trial.

*Moore v. Kemp,* 809 F.2d 702, 712 (11th Cir.1987) (footnote omitted) *cert. denied,* 481 U.S. 1054, 107 S.Ct. 2192, 95 L.Ed.2d 847 (1987). This also the defense counsel failed to do. We specifically find from the evidence of record that the denial of the requested assistance did not result in an unfair trial, and we conclude that the military judge did not err in denying the defense request. This assignment of error clearly lacks merit.

Likewise, the evidence of record supports the members findings, and, we too, are convinced of the appellant's guilt beyond any reasonable doubt. Thus we conclude that the third and fourth assignments of error also lack merit.

In his second assignment of error, the appellant alleges he was denied speedy post-trial review of his case. The following facts are pertinent to a discussion of this issue.

■ The appellant was sentenced on 1 November 1991; the record of trial was authenticated by the military judge on 2 April 1992, 5 months later. The staff judge advocate's [SJA] recommendation was prepared on 2 September 1992, 5 months after the authentication of the record and 10 months after the date the sentence was adjudged. The SJA recommendation consisted of the normal four page review which could have been prepared using the appellant's service record book and a copy of the results of trial. On 2 September 1992, detailed defense counsel departed on terminal leave in conjunction with his release from active duty. On 16 September 1992, substitute defense counsel was appointed for the purpose of accepting service of the recommendation. On 15 October 1992, the appellant, through his counsel, responded to the SJA recommendation and alleged a deni-

---

**2.** Handwriting analysis is not an arcane or highly complex field of study. In fact, a lay witness familiar with the handwriting in question may identify it as long as the familiarity was not acquired solely for the purposes of the court-

martial. *See United States v. Pitts,* 569 F.2d 343 (5th Cir.), *cert. denied,* 436 U.S. 959, 98 S.Ct. 3076, 57 L.Ed.2d 1125 (1978); Military Rule of Evidence 901(b)(2).

al of speedy review. The appellant indicated he had suffered, and continued to suffer, the following prejudice as a result of the delay: (1) he was denied the assistance of his detailed trial defense counsel who was the person most familiar with his case; (2) he was unable to move or get settled due to possible recall to active duty; (3) he was unable to get assistance from the state due to his active duty status; (4) he was unable to gain employment with the state due to his lack of a discharge certificate; and (5) he was unable to have his Armed Forces identification card renewed.

On 30 July 1993, over 9 months after the defense counsel's comments to the SJA recommendation were submitted, the SJA issued an addendum recommendation. On 11 August 1993, the convening authority acted, approving the sentence as adjudged. Thus, over 22 months elapsed from the date the sentence was adjudged to the date of the convening authority's action, and over 16 months elapsed from the date the record of trial was authenticated to the date of the CA's action.

The appellant has renewed with us his objection to the delay. The Government argues that the appellant has failed to demonstrate any verified or verifiable legal prejudice resulting from delay in the post-trial review of his court-martial. As indicated above, however, as early as 24 September 1992, the appellant had written to his newly appointed defense counsel enumerating the various problems he was having because of the delay in the review of his case. [That letter is attached to the substitute defense counsel's response to the SJA recommendation.] The Government argues that this is mere hearsay and should be disregarded. We are not inclined to do so.

In *United States v. Clevidence*, 14 M.J. 17 (C.M.A.1982), the Court of Military Appeals observed, in setting aside the findings and the sentence, that Clevidence claimed that he too had been hindered in finding adequate employment because potential employers were concerned that he might be recalled to active duty.

In the case before us, the Government was on notice as early as 15 October 1992 that the appellant desired a speedy review of his case. Additionally and at that time, the appellant brought to the attention of the Government the problems he was having. The Government made no attempt to assist the appellant in this regard or, if it did so, evidence of such is not included in the record before us. In fact, even now, the Government admits that the appellant should have been assigned to the Navy–Marine Corps Appellate Leave Activity long ago, but his records, as of 26 August 1994, have not been transferred to this new command from Camp Pendleton.

The Government, in its pleading, also avers that "if appellant were truly concerned about the convening authority's delay in taking the action, knowing full-well that civilian employment was at risk, surely he would have made suitable inquiries, either personally or through his trial defense counsel." (Government Reply to Assignment of Errors at 15.) The fact of the matter is that the appellant's concerns were voiced to his substitute counsel in September of 1992; these concerns were passed on to the SJA in the substitute defense counsel's reply to the SJA recommendation. Despite that concern, the SJA did not prepare an addendum to his recommendation until almost 10 months later.

We are mindful that the mandate of *Dunlap v. Convening Authority*, 23 C.M.A. 135, 48 C.M.R. 751, 1974 WL 13908 (1974) (holding presumption of denial of speedy review arises when accused is continuously under restraint after trial and the CA does not promulgate his action within 90 days of the date of such restraint after completion of trial) has been replaced by the rule enunciated in *United States v. Banks*, 7 M.J. 92 (C.M.A.1979) (delay of final action will be tested for prejudice). *United States v. Dunbar*, 31 M.J. 70, 72–73 (C.M.A.1990).

However, as the Court of Military Appeals noted in *Dunlap*:

In military law, the ultimate legal effect of the findings of guilty determined by the court-martial and the sentence imposed by it depends upon the action of the convening authority. In his sole discretion, for any or no reason, he can completely nullify the court's findings of guilty and sentence,

or he can approve only such part of it as he desires.... Finally, review by appellate authorities of the record of conviction can only be as to "findings and sentence approved" by him. In significant ways, therefore, the functions of the court-martial and those of the convening authority in the determination of guilt and in the imposition of sentence are so connected that they can be regarded as representing, for the purpose of speedy disposition of the charges, a single stage of the proceedings against the accused.

23 C.M.A. at 137, 48 C.M.R. at 753 (citations omitted). Despite the overturning of *Dunlap*, this underlying principle retains its validity. *See* UCMJ art. 60(c)(3), 10 U.S.C. § 860(c)(3). "The interrelationship between the court-martial trial and the convening authority's action gives arguable color to a construction of Article 10 [, UCMJ] that includes the convening authority's action as one of the steps required in the trial of the accused." 23 C.M.A. at 137, 48 C.M.R. at 753.

We are mindful of the Court of Military Appeals decision in *United States v. Kossman*, 38 M.J. 258 (C.M.A.1993) (dealing with speedy trial and Article 10, UCMJ, violations), overruling *United States v. Burton*, 21 C.M.A. 112, 44 C.M.R. 166, 1971 WL 12477 (1971) and *United States v. Driver*, 23 C.M.A. 243, 49 C.M.R. 376, 1974 WL 14085 (1974). Therein, the Court had this to say about delays: "It suffices to note that the touch stone for measurement of compliance with the provisions of the Uniform Code is not constant motion, but reasonable diligence in bringing the charges to trial. Brief periods of inactivity in an otherwise active prosecution are not unreasonable or oppressive." 38 M.J. at 262 (quoting *United States v. Tibbs*, 15 C.M.A. 350, 353, 35 C.M.R. 322, 325, 1965 WL 4672 (1965)). We believe that the same analogy applies to the area of speedy review in the context of the case before us.

The appellant had alerted his counsel and, through him, the SJA that delays in the review of his case were causing him problems. Instead of acting with reasonable diligence to prepare his "addendum", the SJA took another 9-plus months to respond to that complaint and complete his recommendation; this is in addition to the 5 months it took the SJA to prepare the initial recommendation. Such delays are not acceptable.

In *Clevidence*, the Court of Military Appeals noted that unreasonable post-trial delays seemed to be a recurring problem in the Coast Guard. 14 M.J. at 19. This Court has itself expressed similar concerns about post-trial delays in the naval service. *See United States v. Henry*, 40 M.J. 722 (N.M.C.M.R. 1994). Unlike the Court of Military Appeals in *Clevidence*, we do not feel it necessary to set aside the findings, but we will take remedial action on the sentence.

Accordingly, the findings are affirmed. Only so much of the sentence is affirmed as provides for confinement for 6 months, forfeiture of $502.00 pay per month for 6 months, and a reduction to E-1.

Senior Judge ORR and Judge KEATING concur.