## UNITED STATES

### v.

Chadwick L. WILLIAMS, 452–19–7990, Aviation Electronics Technician Airman Apprentice (E–2), U.S. Navy.

### NMCM 94 00319.

U.S. Navy–Marine Corps
Court of Criminal Appeals.

Sentence Adjudged 2 May 1989.

Decided 22 May 1995.

LT Gerard Wm. Wittstadt Jr., JAGC, USNR, Appellate Defense Counsel.

LT David K. Herlihy, JAGC, USNR, Appellate Government Counsel.

Before ORR and REED, Senior Judges, and KEATING, J.

REED, Senior Judge:

A decision on this case was initially issued on 31 March 1995, but that opinion was withdrawn by this Court on its own motion on 21 April 1995. The following is the opinion of the Court after reconsideration:

The appellant was tried by a special court-martial, military judge alone, on 2 May 1989. Pursuant to his pleas, he was found guilty of three unauthorized absences, a disrespect, and a bad check offense, in violation, respectively, of Articles 86, 89, and 134, Uniform Code of Military Justice [hereinafter "UCMJ" or "the Code"], 10 U.S.C. §§ 886, 889, 934 (1988). He was sentenced to confinement for 90 days, a forfeiture of $450.00 pay per month for 3 months; reduction to pay grade E–1, and a bad-conduct discharge. Pursuant to a pretrial agreement, the convening authority [CA] suspended all confine-

ment in excess of 50 days.[1] The appellant has now asserted two assignments of error.[2] The following facts are pertinent to an analysis of the assignments of error.

## Facts

The appellant was tried on 2 May 1989. The convening authority acted 3 months later, on 7 August 1989, and forwarded the record to the Judge Advocate General for further review by this Court. Five years elapsed, however, before this record of trial was placed on our docket. It is unclear what, if any, action was taken in the Navy–Marine Corps Appellate Review Activity [NAMARA], Office of the Judge Advocate General, for most of that 5 years. In late fall of 1993, the appellant contacted NAMARA's Administrative Support Division to check on the status of his appeal. He was referred to NAMARA's Appellate Defense Division. An attorney there spoke with the appellant and subsequently filed a pleading with this Court seeking appropriate relief on the appellant's behalf for the appellate delay.

Prior to this time, no counsel had been appointed to represent the appellant at the appellate level. It is the usual practice at NAMARA that no appellate defense counsel is appointed to represent an accused before this Court until his case has been placed on our docket. Appellate defense counsel have not challenged this process. The Judge Advocate General, or his designee, decides when a record of trial that has been forwarded for review under Article 66, UCMJ, will be docketed with us. It is clear from the papers filed by the trial defense counsel with this Court that in the intervening years he had long since ceased his representation of the appellant and had lost all contact with him.

From every indication we have received about this case, it was only after this inquiry by the appellant, near the end of 1993, that any action was taken by the Government to facilitate filing of the appellant's case with this Court. The Government soon thereafter discovered that the court-martial order [CMO], the CA's action, and the staff judge advocate's [SJA's] post-trial recommendation were missing from the record of trial. Although the Government did ultimately find a copy of the CMO, which included a recitation of the text of the CA's action, neither the actual action (which was a separate document from the CMO) nor the SJA's recommendation could be found.[3]

In response to a motion in the nature of a petition for extraordinary relief filed by the appellant in February 1994, we ordered the Government to either (1) produce the record of trial for review or (2) file an explanation of what had been or was being done to remedy any defects in the record and state when the record would be docketed. The Government replied that, since copies of the original action, the recommendation, and the clemency petition could not be found, the record was being returned to the convening authority for a new recommendation and a new action. *See United States v. Cruz*, 38 M.J. 611 (N.M.C.M.R.1993).

Thereafter, a new SJA's recommendation was completed and served on the original trial defense counsel. Because of the length of time that had passed since the trial, the trial defense counsel requested an extension

---

1. We note there was no deferral clause contained in the pretrial agreement and no indication in the record of trial of any other deferment request. Confinement begins to run from the date the sentence is adjudged. Rule for Courts–Martial 1113(d)(2). The court-martial occurred on 2 May 1989. The convening authority took his action on 7 August 1989. Thus all confinement had run by the time of the convening authority's action, *United States v. Lamb*, 22 M.J. 518 (N.M.C.M.R.1986), and there was no confinement to suspend. However, the appellant has not alleged that he served any more confinement than was required under the terms of the pretrial agreement.

2. I. APPELLANT HAS BEEN PREJUDICED BY THE GOVERNMENT'S NEGLIGENCE, OVER THE PAST FIVE YEARS, IN THE ADMINISTRATIVE HANDLING AND FORWARDING OF APPELLANT'S RECORD OF TRIAL TO THIS COURT FOR REVIEW.

   II. THE CONVENING AUTHORITY ACTED WITHOUT THE BENEFIT OF APPELLANT'S CLEMENCY PETITION.

3. The copy of the action in the CMO did indicate that the CA had considered a recommendation from his SJA and a clemency petition that had been filed by the appellant's trial defense counsel. The clemency petition was also missing from the record of trial.

of time in which to reply to the SJA recommendation, arguing that he needed a copy of the record of trial and time to communicate with his client. The record is unclear whether an extension of time was granted. In a lengthy memo that is attached to the record, the trial defense counsel details the problems he had in dealing with the SJA's office and in locating the appellant. Suffice it to say, by the time he had contacted the appellant and filed a clemency petition in response to the SJA's recommendation, the CA had already acted. This failure of the CA to consider the clemency petition resulted in the second assignment of error.

### Analysis

■ In an affidavit, the appellant alleges he has been prejudiced by the lack of speedy review of his court-martial. Specifically, he notes that the company he established has been unable to compete for Government contracts because the Government refuses to contract with him while he remains on active duty. The Government replies, citing *United States v. Jenkins,* 38 M.J. 287 (C.M.A.1993); *United States v. Dunbar,* 31 M.J. 70 (C.M.A. 1990); *United States v. Henry,* 40 M.J. 722 (N.M.C.M.R.1994), that the appellant has offered "nothing more than vague allegations of being 'denied very lucrative contracts with the military'" and that his assignments should be dismissed. (Government's Reply to Assignments of Error at 4.) We agree with the Government that more is required of the appellant than mere assertions of lost employment opportunities.[4] This does not end our inquiry, however.

■ Of particular concern to us in this case is the fact that the delay the appellant has incurred was not caused by inexperienced sailors or Marines untutored in the complexities of legal review. Rather, the delays resulted from the inattention, dereliction, or incompetence of legally trained personnel. There is no explanation for the delays that have occurred, and apparently, no one has been held responsible for them.

Additionally, as noted earlier, the appellant was denied representation at the appellate level for over 5 years by the failure of the Judge Advocate General, or his designee, to docket the appellant's case with this Court. Article 70(c) of the Code, 10 U.S.C. § 870(c) (1988), provides an accused servicemember with the right to appellate defense counsel. The U.S. Court of Military Appeals (now the U.S. Court of Appeals for the Armed Forces) has "recognized that the right to be represented by counsel at the trial and on appeal are primary rights of persons accused of crime in the civilian and military communities in the United States." *United States v. Palenius,* 2 M.J. 86, 90 (C.M.A.1977).

The Government acknowledged in its reply to the appellant's motion that

> there are many other cases which present delays as long or even longer than the delay seen here ... [and that] efforts are being made to identify all cases which have not been properly forwarded for review and to ensure that they are referred to the Court or administratively resolved. Steps are also being taken to bring institutional changes to prevent future breakdowns in the review process.

(Government's Reply to Appellant's Motion to Attach Documents and for Other Appropriate Relief at 2 n. 2.) We wish we could take the Government at its word. History and our experience indicate otherwise. As far back as 1984, the Navy indicated to the Court of Military Appeals that it was attempting to develop an automated information system to better track its cases and their status. *See United States v. Bruton,* 18 M.J. 156, 157 n. 2 (C.M.A.1984). To our knowledge, no such tracking system has been implemented.

More than 10 years ago, the Court of Military Appeals dismissed the charges and specifications in a case that arose in the naval service and commented on the "long and unexplained delay and the other circumstances" occurring in the appellate review of the case. *Id.* at 157. The Court noted that the cases of *United States v. Sutton,* 15 M.J.

---

4. See footnote 5 of *United States v. Dunbar,* 28 M.J. 972, 980 (N.M.C.M.R.1989), *aff'd and cited with approval in, United States v. Dunbar,* 31 M.J.

70, 73 (C.M.A.1990)) for examples of how an appellant might establish specific prejudice.

235 (C.M.A.1983), and *United States v. Clevidence,* 14 M.J. 17 (C.M.A.1982), foreshadowed its decision in *Bruton.* Sutton was a sailor; Clevidence was a member of the Coast Guard.

This Court has itself expressed its dismay over the continuing failure of the Government to act expeditiously in the appellate processing of courts-martial. *United States v. Thomas,* 41 M.J. 873 (N.M.Ct.Crim.App. 1995); *United States v. Henry,* 40 M.J. at 724 n. 6 (listing unpublished 1994 N.M.C.M.R. decisions in cases with long post-trial delays). Despite the concerns reflected by this Court and the Court of Military Appeals during the past decade, inordinate delays continue to occur with some regularity. Nor are we aware of any one being held accountable for the delays.[5] This, despite the fact that Article 98 of the Code provides that

> Any person subject to this chapter who—
>
> (1) is responsible for unnecessary delay in the disposition of any case of a person accused of an offense under this chapter; or
>
> (2) knowingly and intentionally fails to enforce or comply with any provision of this chapter regulating the proceedings before, during, or *after trial* of an accused; shall be punished as a court-martial may direct.

10 U.S.C. § 898 (1988) (emphasis added). Surely, if this Article means anything, it means that Congress desires, in fact mandates, the expeditious processing of courts-martial.

The deprivation of the appellant's right to appellate counsel for 5 years, the failure of the convening authority to consider the appellant's current clemency petition, the appellant's assertion of prejudice, and the egregious unexplained delay occurring at NAMARA require remedial action on our part. In this case, however, we do not find it appropriate to dismiss the charges when the appellant has pled guilty to fairly serious offenses and there is no claim of legal error occurring

at trial. We will, however, take remedial action on the sentence under the authority granted to us under Article 66(c) of the Code, 10 U.S.C. § 866(c). Our remedy should moot the appellant's second assignment of error, since the convening authority, in his original action, gave no clemency to the appellant even after considering his petition.

Accordingly, the findings are affirmed. Only so much of the sentence is affirmed as provides for confinement for 50 days, forfeitures of $450.00 pay per month for three months, and reduction to pay grade E–1.

ORR, Senior Judge, concurring:

I write only to emphasize that our decision in this case does not seek to establish a new rule concerning post-trial delays at the appellate level in any way contrary to the precedent established by our superior court (now the U.S. Court of Appeals for the Armed Forces) and discussed by our dissenting brother, Judge Keating. Rather we have chosen to exercise what Judge Cox in writing for the Court in *United States v. Cole,* 31 M.J. 270, 272 (C.M.A.1990), has referred to as our "awesome, plenary, *de novo* power of review" under Article 66 of the Uniform Code of Military Justice to "affirm only ... such part or amount of the sentence[ ] as ... [we] find[ ] correct in law and fact and determine[ ], on the basis of the entire record, should be approved." 10 U.S.C. § 866(c) (1988).

When Judge Cox wrote his concurrence in *United States v. Dunbar,* 31 M.J. 70, 74 (C.M.A.1990), which Judge Keating refers to at some length in his dissent, Judge Cox mentioned that unexplained and unjustified delays occur at the appellate level from time to time in all of the services and even before that Court. *Id.* at 75–76. Judge Cox also pointed out that the only remedy available to an accused in such a situation is to have his case heard at the appellate level. *Id.* (citing *United States v. Green,* 4 M.J. 203 (C.M.A. 1978), and *United States v. Timmons,* 22 C.M.A. 226, 46 C.M.R. 226 (1973)). Within

---

**5.** As is not uncommon with rotating personnel assignments in the armed services, it is the one who discovers the problem who frequently bears the brunt of the opprobrium rather than the individual who may have caused the problem and has since departed. We are aware that the Judge Advocate General is currently developing a tracking system.

the scope of our powers of review, that is exactly what we have done.

In this same context, Judge Cox also indicated how appellate Government counsel are often left in such cases to conjecture before the Court about "a record of trial ... lost aboard a submarine beneath a polar ice cap, left in a foxhole during maneuvers, or discarded in a squadron's hangar ... [and that] [m]ilitary justice deserves better." *Id.* There is no such conjecture in this case. The record was literally across the hall from this Court for 5 years. I do not think the Judge Advocate General has the unlimited discretion under either Article 65 or Article 66 of the Code to hold a record of trial indefinitely before referring the record to this Court for review, particularly, as Senior Judge Reed points out, when the assignment of appellate defense counsel awaits our receipt of the record. The relief proposed by Judge Keating—to set aside the second action and return the record of trial for a new action—is a remedy for an error that occurred 5 years after the convening authority initially acted on the case. It is not in any way a remedy for the delay that led to that error.

KEATING, Judge, dissenting:

I join the majority in expressing dismay over the failure of the Government to act expeditiously in the appellate processing of this court-martial. I disagree only with the remedy the majority adopts to address that failure.

This case, unlike the situation we addressed in our recent decision in *United States v. Thomas,* 41 M.J. 873 (N.M.Ct.Crim.App.1995) concerns delay entirely at the appellate level. In *Thomas,* over 22 months elapsed from the date the sentence was adjudged until the date of the convening authority's action. We relied on the underlying principle stated by the U.S. Court of Military Appeals in *Dunlap v. Convening Auth.,* 23 C.M.A. 135, 48 C.M.R. 751 (1974), that for the purpose of speedy disposition of the charges against an accused, the trial and the action of the convening authority can be regarded as a single stage. *See* UCMJ art. 60(c)(3), 10 U.S.C. § 860(c)(3) (1988). We then applied the "reasonable diligence" stan-

dard of *United States v. Tibbs,* 15 C.M.A. 350, 353, 35 C.M.R. 322, 325 (1965), and found 5 months to prepare the SJA recommendation and over 9 more months to prepare an "addendum" to that recommendation to be unacceptable and took remedial action on the sentence.

The principle underlying *Dunlap* does not apply, however, once the case has been acted upon by the convening authority. In *United States v. Green,* 4 M.J. 203 (C.M.A.1978), the Court of Military Appeals limited the application of the *Dunlap* decision to delay occurring prior to the convening authority's action. The Court quoted language from two earlier cases:

> [A]bsent prejudicial error occurring during the court-martial proceedings, an inordinate delay at the appellate level does not justify dismissal of the charges. A dismissal is appropriate only where an accused "would be either prejudiced in the presentation of his case at a rehearing or ... no useful purpose would otherwise be served by continuing the proceedings."

*Green,* 4 M.J. at 204 (citation omitted).

The present case also involves a delay at the appellate level and there are no errors in the trial proceedings requiring corrective action. The appellant is therefore, not entitled to dismissal of the charges. *United States v. Halcomb,* 25 M.J. 750 (N.M.C.M.R.1987), *petition denied,* 26 M.J. 48 (C.M.A.1988); *accord United States v. Dupree,* 37 M.J. 1089 (N.M.C.M.R.1993). As to whether he should be granted some other form of relief, such as with respect to the sentence, I would follow the view expressed by Judge Cox in his concurring opinion in *United States v. Dunbar,* 31 M.J. 70, 74 (C.M.A.1990) (Cox, J., concurring in the result).

In *Dunbar,* the claim of prejudice was, as it is in this case, based not on any error at trial but on aspects of the appellant's personal life. The majority found that the appellant had failed to demonstrate that he had been prejudiced and denied relief on that basis. Judge Cox, in his concurring opinion, departed from the majority by relying on *Green.* He noted that the right to a speedy trial was guaranteed by the Sixth Amend-

ment to the Constitution and in military law by Article 10, UCMJ, 10 U.S.C. § 810 (1988), but that in neither military nor civilian law has such a privilege been provided on appeal. *Dunbar*, 31 M.J. at 74 (quoting *United States v. Richmond*, 11 C.M.A. 142, 145, 28 C.M.R. 366, 369 (1960)). He concluded that, although the delay of more than 2½ years after the convening authority had acted was unexplained and unjustified, "[t]he appropriate remedy, the only remedy available to ... [*Dunbar* was] to have his case heard on appeal." *Dunbar*, 31 M.J. at 76. I would apply *Green* and the concurring opinion of Judge Cox in *Dunbar* to this case to resolve the first assignment of error against the appellant.

As to the second assignment of error, I would grant relief and return the record to the convening authority for a new action. I read Article 66(b), UCMJ, 10 U.S.C. § 866(b) (1988), to create a requirement for mandatory review of certain records of trial by this Court. *See* Rule for Courts–Martial [R.C.M.] 1201(a). Although not expressly stated in either the Code or the Manual for Courts–Martial, I believe what is contemplated by both is a continuous progression with no detour or stopover between the convening authority and this Court. There is no authority, in my view, for holding in the Office of the Judge Advocate General any record that the convening authority has acted on because the record is incomplete or defective in some respect.[6] Likewise, I find no authority for any designee in the office of the Judge Advocate General, other than this Court, to return such a record for a new convening authority's action, as was done in this case. *Contra United States v. Cruz*, 38 M.J. 611 (N.M.C.M.R.1993) (holding that the Judge Advocate General need not refer a "defective" record of trial to this Court but can return such a record to the convening authority who can then take a new action).

The Court of Military Appeals has interpreted R.C.M. 1107(f)(2) as depriving the convening authority of jurisdiction of a case subject to review under Article 66, UCMJ, once the action is published or the accused officially notified thereof. The Court noted that "from that point on, jurisdiction is in the Court of Military Review." *United States v. Montesinos*, 28 M.J. 38, 42 (C.M.A.1989). The Court recently refined its holding in *Montesinos* to recognize the 10 day period during which an accused may waive appellate review under Article 61(a), UCMJ, 10 U.S.C. § 861(a) (1988). *United States v. Diaz*, 40 M.J. 335 (C.M.A.1994). Both *Montesinos* and *Diaz* deal with how a case moves on a "time line" from the convening authority to this Court. "[A] court-martial case follows an orderly procession during which, at any given time, it rests within the power of a single authority." *Diaz*, 40 M.J. at 343. That authority is either the convening authority or this Court. *Cruz* permits an intermediate stop in the office of the Judge Advocate General where "defective" records are held until they are deemed complete and ready for appellate review. I would overrule *Cruz* and hold that the action of the convening authority dated 3 August 1994 was a nullity.

Finally, the concurring opinion argues that taking remedial action on the sentence is appropriate as an exercise of this Court's power under Article 66(c) of the UCMJ. I do not question this Court's authority to reduce sentences in the interest of justice as a discretionary matter. What the majority fails to take into account in this case, however, is the difference between sentence appropriateness and clemency. Article 66(c) "assigns to the Courts of Military Review only the task of determining sentence appropriateness: doing justice." *United States v. Healy*, 26 M.J. 394, 395–96 (C.M.A.1988). The responsibility for clemency was placed by Congress in the hands of others empowered to commute, remit, or suspend the sentence or to change the character of a punitive discharge. *Healy*, 26 M.J. at 396.

---

6. The situation would be different if, in fact, the convening authority had not acted on the case. In that event, this Court would have no statutory jurisdiction to review the findings and sentence or presumably to remand the record. *United States v. Diaz*, 40 M.J. 335 (C.M.A.1994). Such a record would not have been forwarded under Article 65, UCMJ, 10 U.S.C. § 865 (1988), but simply misrouted, and could be administratively returned to the convening authority without action by this Court.

The remedial action taken on the sentence by the majority in this case departs from the standards for determining sentence appropriateness set for us by the Court of Military Appeals, now the United States Court of Appeals for the Armed Services. "[S]entence appropriateness should be judged by 'individual consideration' of the particular accused 'on the basis of the nature and seriousness of the offense and the character of the offender.'" *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A.1982) (quoting *United States v. Mamaluy*, 10 C.M.A. 102, 106–7, 27 C.M.R. 176, 180–81 (1959)). What the majority is doing here has to do with neither the offenses of which the appellant was convicted or of the appellant's character as an offender. It is, in my view, clemency, pure and simple.

Undoubtedly, Congress intended to entrust clemency to the persons who it believed would be best qualified and in the best position to obtain and evaluate information relevant to clemency—such as the accused's conduct while in confinement, personal financial burdens confronting the accused or his family, and his present mental and physical condition. We also presume that Congress did not want to duplicate responsibility for the same activity.

*Healy,* 26 M.J. at 396.

The convening authority is one of those authorized to grant clemency. *See* UCMJ art. 60(c)(1), 10 U.S.C. § 860(c)(1) (1988). I would remand the record for a new staff judge advocate's recommendation and action by the convening authority after consideration of the appellant's clemency package.