ERDMANN, Judge
(concurring in part and dissenting in part):
I agree with the conclusion of the majority that the Navy-Marine Corps Court of Criminal Appeals erred by focusing upon the absence of an objection to this delay to the convening authority. With respect to the remedy, I would address the legal error here, de novo, without returning this case to the Court of Criminal Appeals for further review. United States v. Cooper, 58 M.J. 54, 58 (C.A.A.F.2003). The post-action delay in shipping this eighty-two-page record of trial to the Navy-Marine Corps Appellate Review Activity was unreasonable, unexplained, and so lengthy as to warrant an inference of prejudice to Oestmann’s rights and therefore violates his due process rights to a speedy appellate review. I would reverse the decision of the Court of Criminal Appeals and set aside the findings and sentence.
The Government did not offer a defense or explanation for this 511-day delay. When queried during oral argument, the Government acknowledged that the only task required to get the record to the appellate review activity was the ministerial act of boxing it up and mailing it. Although there *105 are other tasks such as preparation of the promulgating order and completion of form checklists, all tasks associated with forwarding the record are routine. See, e.g., Rules for Courts-Martial 1111 and 1114. These tasks require no discretion and they should take a matter of days, not seventeen months. Even in an extraordinary ease, completion of these routine tasks should take no longer than thirty days.
This court abandoned the so-called draconian ninety-day rules of United States v. Burton, 21 C.M.A. 112, 44 C.M.R. 166 (1971), and Dunlap v. Convening Authority, 23 C.M.A. 135, 48 C.M.R. 751 (1974), in part, based upon our confidence that the system would maintain its dedication to speedy disposition and post-trial processing of courts-martial. See United States v. Kossman, 38 M.J. 258, 261 (C.M.A.1993); United States v. Banks, 7 M.J. 92, 93 (C.M.A.1979). Unfortunately, Oestmann’s case and others reviewed by this court demonstrate that our confidence in continued timely post-trial processing and appellate review may have been misplaced. See United States v. Jones, 61 M.J. 80 (C.A.A.F.2005); Rodriguez-Rivera v. United States and The Judge Advocate General of the Navy, 61 M.J. 19 (C.A.A.F.2005); Toohey v. United States, 60 M.J. 100 (C.A.A.F.2004); Diaz v. The Judge Advocate General of the Navy, 59 M.J. 34 (C.A.A.F.2003); United States v. Tardif, 57 M.J. 219 (C.A.A.F.2002). Post-trial processing times have risen dramatically since our decision in Banks. This rise is all the more alarming when measured against a relatively low number of cases tried in recent years.
While I am not opposed to again considering draconian rules to protect the due process rights of servicemembers convicted by courts-martial should we continue to see unreasonable post-trial delays, this case does not require such a drastic remedy. Four factors are considered to determine whether an appellate delay violates an appellant’s due process rights: “(1) length of the delay; (2) reasons for the delay; (3) the appellant’s assertion of his right to a timely appeal; and (4) prejudice to the appellant.” Toohey, 60 M.J. at 102; Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). After applying that four-part due process test to these facts, I find a due process violation.
(1) Length of Delay
The length-of-delay factor “is actually a double enquiry.” Doggett v. United States, 505 U.S. 647, 651, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). First, the “length of the delay is to some extent a triggering mechanism,” and unless there is a period of delay that appears, on its face, to be unreasonable under the circumstances, “there is no necessity for inquiry into the other factors that go into the balance.” Barker, 407 U.S. at 530, 92 S.Ct. 2182. Second, if the constitutional inquiry has been triggered, the length of delay is itself balanced with the other factors and may, in extreme circumstances, give rise to a strong “presumption of evidentiary prejudice” affecting the fourth Barker factor. Doggett, 505 U.S. at 655-57, 112 S.Ct. 2686.
United States v. Smith, 94 F.3d 204, 209 (6th Cir.1996).
The 511-day delay to ship the record of trial is excessive and unreasonable on its face, therefore triggering the constitutional inquiry. As noted, the Government acknowledged that the only task required to get the record to the appellate review activity was the ministerial act of boxing it up and mailing it. This factor weighs heavily in favor of Oestmann.
(2) Reason for Delay
The Government did not give any reason for the delay. See United States v. Dunbar, 31 M.J. 70, 73 (C.M.A.1990) (delay in forwarding a record of trial to the Court of Criminal Appeals is “the least defensible of all” post-trial delays). This factor weighs heavily in favor of Oestmann.
(3) Oestmann’s Assertion of the Right
Oestmann did not assert his right to a speedy forwarding of the record. Normally a lack of action would weigh against Oest-mann. But after action is taken by the convening authority and before a case is dock *106 eted at the Court of Criminal Appeals, a convicted servieemember has virtually no forum in which to complain about delay in forwarding the record. While trial defense counsel has an obligation to continue representation, see United States v. Palenius, 2 M.J. 86 (C.M.A.1977), after a client is transferred to serve confinement and action has been taken by the convening authority, trial defense counsel has little further involvement. The Government recognized this representational void at oral argument when it suggested that Oestmann should have complained of the delay to his commanding officer, a chaplain or his congressman. None of these individuals has direct responsibility for timely processing of cases in the military justice appellate system.[1] Because service-members in Oestmann’s position are in a representational void in the period between the convening authority’s action and the docketing of a case for appeal, I do not weigh the absence of an assertion of the right to timely appellate review against Oestmann.
(4) Prejudice
To establish prejudice, Oestmann argues that he was denied a meaningful opportunity for relief in that the Court of Criminal Appeals’ decision reducing his sentence had no practical effect because of the delay. The Government counters that there is no prejudice because even without this delay the Navy-Marine Corps court would not have ruled before Oestmann was released from incarceration. While I question the wisdom of the Government in arguing that the normal delay at the lower court is so extreme that even without this additional 511-day delay, that court would not have ruled on Oestmann’s appeal before he was released from incarceration, I need not resolve that dispute to find prejudice here.
The Supreme Court found that “excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify.” Doggett v. United States, 505 U.S. 647, 656, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).[2] The Sixth Circuit further explained this “presumptive prejudice” element in Smith: “any ‘excessive déla/ — that is, any delay triggering the Barker analysis — will generally give rise to a presumption of prejudice, and the only question is how much ‘importance’ to assign to that prejudice.” 94 F.3d at 212. See also Toohey, 60 M.J. at 102. Here, an indefensible 511-day delay in transmitting an eighty-two-page record of trial requires that substantial weight be assigned to the presumptive prejudice. The Government did not overcome the presumption.
Any delay that reflects a disregard for the rights of convicted servicemembers is troublesome. Delays between the court-martial and review by the Courts of Criminal Appeals are particularly egregious. Review at a Court of Criminal Appeals “involves a fresh, impartial look at the evidence, giving no deference to the decision of the trial court on factual sufficiency beyond the admonition in Article 66(c), UCMJ, 10 U.S.C. § 866(c), to take into account the fact that the trial court saw and heard the witnesses.” United States v. Washington, 57 M.J. 394, 399 (C.A.A.F.2002). In that same context we have noted that “the Courts of Criminal Appeals have unique fact finding authority, and that aspect of a servicemember’s case is not concluded until that review is completed.” Diaz, 59 M.J. at 39. The same can be said of the sentence in light of the Court of Criminal Appeals’ responsibility to independently assure an appropriate sentence. The neglect and indifference reflected here not only violate a servicemember’s constitutional right to speedy appellate review, they also erode ser- *107 vicemembers’ confidence in the military justice system as well as the public’s perception of fairness in the system.
The unique nature of review under Article 66(c) “calls for, if anything, even greater diligence and timeliness than is found in the civilian system.” Diaz, 59 M.J. at 39. Therefore, I would reverse the decision of the Court of Criminal Appeals and set aside the findings and sentence.

. The fact that the Government views a congressional complaint as an appropriate avenue for a servieemember to pursue when confronted with post-trial delay merely demonstrates that the current system is flawed.

. While Doggett dealt with a speedy trial delay, circuit courts have split on whether its rationale is applicable to appellate delays as well. Accord Smith ; Taylor v. Hargett, 27 F.3d 483, 486 (10th Cir.1994). Contra United States v. Mohawk, 20 F.3d 1480, 1488 (9th Cir.1994); Elcock v. Henderson, 28 F.3d 276, 279 (2d Cir.1994). This court adopted the Barker four-part analysis with respect to post-trial speedy disposition claims, and I would include in that analysis the Doggett presumption of prejudice in those instances where delay is excessive.