IN THE CASE OF


Salvador DIAZ, Petitioner

v.

THE JUDGE ADVOCATE GENERAL OF THE NAVY, Respondent


No. 03-8014

Crim. App. No. 200200374

United States Court of Appeals for the Armed Forces


Decided August 5, 2003


Counsel

For Petitioner:  Lieutenant Colin A. Kisor, JAGC, USNR.

For Respondent:  Lieutenant Frank L. Gatto, JAGC, USNR, and
Commander R. P. Taishoff, JAGC, USN.

Amicus Curiae:  Kevin J. Barry, Esq., Eugene R. Fidell, Esq.,
and Stephen A. Saltzburg, Esq., for the National Institute of
Military Justice.



This opinion is subject to editorial correction before final publication

<u>Diaz v. The Judge Advocate General of the Navy</u>, No. 03-8014/NA

PER CURIAM:

The Petitioner, Navy Firecontrolman Chief Salvador Diaz, initiated this proceeding by filing a Motion for Appropriate Relief which raised issues concerning the timeliness of the appellate process being afforded him as well as potential issues of ineffective assistance of appellate defense counsel. In response, this Court ordered the Respondent Judge Advocate General of the Navy (Government) to show cause why appropriate relief should not be granted. The Government's Answer in response to these serious issues is not persuasive. We conclude that the Navy-Marine Corps Court of Criminal Appeals should have taken action to ensure the protection of Petitioner's rights when he sought relief from that court. We therefore remand this matter to the Court of Criminal Appeals to take appropriate action and issue such orders as are necessary to ensure the timely filing of an Assignment of Errors and Brief on behalf of Petitioner, and we order such further action as directed in this opinion.

## Background

Petitioner was tried by a general court-martial on June 14, October 30, and November 27 – December 1, 2000. Contrary to his pleas of not guilty, he was convicted of multiple charges of rape and indecent acts with his 12-year-old daughter. On

December 1, 2000 (day zero),[1] Petitioner was sentenced to a dishonorable discharge, confinement for nine years, total forfeiture of all pay and allowances, and reduction to E-1.  The convening authority approved the sentence without modification on December 21, 2001 (day 385).[2]

The Navy-Marine Corps Appellate Review Activity received Petitioner's case on February 25, 2002 (day 451), and it was docketed with the Navy-Marine Corps Court of Criminal Appeals on February 28, 2002 (day 454).  Petitioner's first appellate defense counsel filed ten requests for enlargement of time to file an assignment of errors.  On December 3, 2002 (day 732), Petitioner filed a pro se petition for a Writ of Habeas Corpus with the Court of Criminal Appeals requesting release from confinement pending appeal.  This request was based on an assertion that Petitioner's appellate defense counsel had not even commenced an initial review of the record of trial because of an excessive caseload.  The court denied the writ petition on

---

[1] As Petitioner's primary allegation is that his appellate review has not been processed in a timely manner, we will note the number of days from sentencing upon which each significant event in the post-trial process occurred.

[2] The Government notes in a footnote that the post-trial delay from sentencing to action "was not unreasonable under the circumstances."  Because the reasonableness of any delay between sentencing and the convening authority's action is a matter for consideration initially by the Court of Criminal Appeals, see United States v. Tardif, 57 M.J. 219 (C.A.A.F. 2002), that issue is not before us at this time.

<u>Diaz v. The Judge Advocate General of the Navy</u>, No. 03-8014/NA

December 4, 2002 (day 733), though it did note that Petitioner

"expressed concern with post-trial and appellate delay in his

case." Petitioner filed for reconsideration, which was denied

on February 11, 2003 (day 802).

Petitioner then filed a Motion for Appropriate Relief with

this Court. We construed his motion as a Petition for

Extraordinary Relief, and on June 16, 2003 (day 927), we ordered

the Government to show cause why relief should not be granted.

The Government filed an Answer to the Show Cause Order on June

26, 2003 (day 937). Represented by a new appellate defense

counsel, Petitioner filed his Reply to Respondent's Answer on

July 3, 2003 (day 944).

## The Government's Answer

Although the Government acknowledges that the Due Process

and Equal Protection Clauses of the Constitution apply to review

of a case before the service Courts of Criminal Appeals, and

that "[d]elays caused by Government or State paid attorneys

representing an accused on appeal have been held attributable to

the Government[,]" the Government broadly asserts that "[t]he

appellate delay in this case was neither excessive nor has it

amounted to a prejudicial violation of Petitioner's due process

rights."

Despite the fact that Petitioner's appellate defense counsel have had this case since late February 2002, the Government argues that Petitioner has failed to show that this delay, "in and of itself, is sufficient to characterize the delay as inordinate and excessive giving rise to a due process claim."  The Government also notes that Petitioner "has not even served one-third of his nine year sentence," although this fact would seem to underscore rather than excuse the failure to initiate a legal and factual review that could conceivably alter Petitioner's conviction, sentence, or both.

The Government makes several specific arguments why the delay should not be considered excessive:

- Due to the unique rights accorded servicemembers in our court-martial system, this Court should acknowledge that a detailed appellate counsel's caseload can be an appropriate factor in deciding when the length of appellate delay becomes inordinate and excessive;

- This Court should not judge the length of time it takes a detailed military counsel to perfect an appeal in relation to the time it takes to perfect such an appeal when an appellant decides to hire his own private civilian counsel;

- This Court should not judge the length of time it takes a detailed military counsel to perfect an appeal in relation to

 civilian "public defenders" who are required to represent only

 indigent defendants, not all defendants, before the court;

- The military justice system requires the mandatory review of a

 vast number of court-martial cases regardless of whether the

 servicemember files a notice of appeal, and it is therefore

 reasonable and not a violation of due process when an appeal

 takes longer to perfect and decide in the military justice

 system than in the civilian justice system;

- This delay is not inordinate or excessive because of the size

 of the record of trial, the seriousness of the charges, the

 number of issues identified by Petitioner, and the "high

 volume of cases submitted to the lower Court."

The Government summarizes that "the advocacy of the parties, the

institutional vigilance of both the lower Court and the

Government, as well as the reasons for the delay all justify the

delay in this case."

 Even if this Court were to find a violation of due process,

the Government argues that Petitioner is not entitled to relief,

because he has not established substantial prejudice. The

Government urges that the factors to be used in determining

substantial prejudice in a case of speedy appellate review are

similar to those used to determine prejudice for lack of a speedy trial[3] and that Petitioner has not met his burden.

Petitioner's Reply

Petitioner argues in his Reply that the delay has been inordinate and excessive. Petitioner focuses primarily on the root problem that caused the delay but also addresses the various rationalizations offered by the Government for the delay.

Petitioner notes that his case is currently on its eleventh period of enlargement. He points out that his case has yet to receive any substantive review by his appellate counsel, even though counsel has had his case since February 28, 2002. He has been confined post-trial for more than two and one-half years; he has asserted his right to speedy appellate review; and his case is now in the hands of a second detailed appellate defense counsel. In her tenth request for enlargement, Petitioner's first appellate defense counsel cited her "caseload commitments" as cause for the requested relief. That "commitment" included "sixty-six cases on her docket totaling more than 16,000 pages

---

[3] "1) preventing oppressive incarceration pending appeal; 2) minimizing anxiety and concern of those convicted awaiting the outcome of their appeal; and 3) limiting of the possibility that Petitioner's grounds for appeal or, in the event of reversal, his defense in the case on retrial might be impaired."

[of trial transcript,] eleven [cases] in thirteenth enlargement or higher."

Now on an eleventh enlargement, Petitioner's case is in the hands of a new appellate defense counsel. That new counsel notes that there is "little hope of [Petitioner's] case being exhaustively read and the appellate issues briefed anytime soon given the present workload of the current Appellate Defense Counsel."

Petitioner's counsel also informs us that there are 1,463 cases pending initial review and filing by Navy-Marine Corps appellate defense counsel, and the average caseload, per counsel, in the Navy-Marine Corps Appellate Defense Division is "70 cases comprising [an] average total of 18,100 pages of trial transcript." Petitioner asserts that the increasingly long period of "continuing" appellate delay, during which he has actively pursued his appeal, is grounds for extraordinary relief.

In contending that he is being denied speedy appellate review, Petitioner takes specific issue with several of the Government's arguments. Petitioner disputes the suggestion that he should seek civilian counsel. Petitioner asserts that he is indigent, was sentenced to total forfeitures, has gone through bankruptcy, has no property, and has only about $3,200 in various accounts. Additionally, Petitioner notes that the

<u>Diaz v. The Judge Advocate General of the Navy</u>, No. 03-8014/NA

suggestion that he should protect his right to a speedy appellate review by hiring civilian counsel "is entirely spurious insofar as it amounts to an assertion that a timely appeal under Article 66, UCMJ, is available only to those who can pay for it."

Petitioner next disputes the Government's claim that the issues Petitioner identified for review do not make a "colorable claim of any possibility or probability of relief on Appeal." Petitioner notes that he has identified 14 issues in pro se pleadings filed at the Court of Criminal Appeals. These issues include "ineffective assistance of counsel, unlawful command influence, and other procedural and evidentiary errors" which have yet to be reviewed or ruled upon by any appellate court. Petitioner questions the soundness of the Government's claim that, in order to be entitled to relief from this delay, he must show that his direct appeal has merit, when he "has not had the assistance of an appellate defense attorney in identifying, researching, and briefing the legal issues which he has identified."

Petitioner further asserts that he is anxiously languishing in prison, a fact evidenced by his detailed pro se pleadings and his efforts to prosecute his appeal even though his appellate defense counsel have been unable to provide him professional assistance.

Diaz v. The Judge Advocate General of the Navy, No. 03-8014/NA

## Discussion

This Court has long recognized that an accused has the right to a timely review of his or her findings and sentence. See United States v. Williams, 55 M.J. 302, 305 (C.A.A.F. 2001). That review spans a continuum of process from review by the convening authority under Article 60, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 860 (2000), to review by a Court of Criminal Appeals under Article 66, UCMJ, 10 U.S.C. § 866 (2000), to review, in appropriate cases, by this Court under Article 67, UCMJ, 10 U.S.C. § 867 (2000). An accused has the right to effective representation by counsel through the entire period of review following trial, including representation before the Court of Criminal Appeals and our Court by appellate counsel appointed under Article 70, UCMJ, 10 U.S.C. § 870 (2000). See United States v. Palenius, 2 M.J. 86 (C.M.A. 1977).

We have had repeated opportunities to address issues of delay in the various stages of that review process. See, e.g., United States v. Tardif, 57 M.J. 219, 220 (C.A.A.F. 2002)(13-month delay between sentencing and referral to Court of Criminal Appeals); United States v. Hock, et al., 31 M.J. 334 (C.M.A. 1990)(delay of several years between service of lower court decisions and petitions for review at this Court); United States v. Dunbar, 31 M.J. 70 (C.M.A. 1990)(three-year delay between trial date and docketing at the service court); United States v.

10

Diaz v. The Judge Advocate General of the Navy, No. 03-8014/NA

Clevidence, 14 M.J. 17 (C.M.A. 1982)(313-day delay between sentence and final action by supervisory authority); United States v. Green, 4 M.J. 203 (C.M.A. 1978)(nine-month delay in transmission of appeal from service court to this Court); United States v. Timmons, 22 C.M.A. 226, 46 C.M.R. 226 (1973)(six-month delay between sentencing and action by convening authority).  We are, for present purposes, concerned with the delay in the processing of Petitioner's case under Article 66.  See __ M.J. (3 n.2).

Petitioner's right to a full and fair review of his findings and sentence under Article 66 embodies a concomitant right to have that review conducted in a timely fashion. Additionally, Petitioner has a constitutional right to a timely review guaranteed him under the Due Process Clause.  Harris et al. v. Champion et al., 15 F.3d 1538 (10th Cir. 1994)(quoting Evitts v. Lucey, 469 U.S. 387, 393 (1985)(where state has created appellate process as integral part of criminal justice system, procedures used in deciding appeal must comport with demands of due process and equal protection)); United States v. Antoine, 906 F.2d 1379 (9th Cir. 1990); United States ex rel. Green v. Washington, 917 F. Supp. 1238 (N.D. Il. 1996).

The Government has advanced several arguments as to why the period of delay should not be considered as excessive or inordinate and should, in fact, be condoned by this Court as a

11

part of the normal appellate process.  We will address the

Government's major arguments:

1.  The Government argues that due to the unique rights

    afforded servicemembers by Congress, this Court should

    take the caseload of a detailed appellate defense

    counsel into account when determining whether an

    appellate delay is excessive.  The Government, however,

    has not identified support in the applicable

    legislation or legislative history for the proposition

    that Congress intended that the rights afforded

    servicemembers under the UCMJ should be used as a basis

    to diminish their right to timely appellate review.[4]

    Appellate counsel caseloads are a result of management

    and administrative priorities and as such are subject

---

[4] The American Bar Association's Model Rules of Professional Conduct (2003 ed.) require that counsel "shall act with reasonable diligence and promptness in representing a client." Model Rules of Prof'l Conduct R. 1.3.  "A lawyer's work load must be controlled so that each matter can be handled competently." Id. at cmt. 2.  Article 70(a), Uniform Code of Military Justice, 10 U.S.C. 870(a) (2000), places the responsibility for detailing appellate counsel on the Government.  If an onerous caseload hinders the timely processing of appeals or infringes on the effective assistance of counsel, then it is the Government, not an appellant, who bears the responsibility to take corrective action. See, e.g., Green, 917 F. Supp. 1238, 1250 (N.D. Il. 1996)(finding, based on expert testimony, that assignment of significantly more than 25 cases of average complexity to one appellate attorney in a single calendar year would create unacceptably high risk that the attorney would be unable to brief the cases competently within a reasonable period of time).

to the administrative control of the Government. To allow caseloads to become a factor in determining whether appellate delay is excessive would allow administrative factors to trump the Article 66 and due process rights of appellants. To the contrary, the Government has a statutory responsibility to establish a system of appellate review under Article 66 that preserves rather than diminishes the rights of convicted servicemembers.[5] In connection with that responsibility, the Government has a statutory duty under Article 70 to provide Petitioner with appellate defense counsel who is able to represent him in both a competent and timely manner before the Court of Criminal Appeals.

2.  The Government suggests that Petitioner should retain private counsel, but also argues that this Court should not compare the length of time it takes a detailed military counsel to perfect an appeal to the length of time that it takes a privately retained civilian

---

[5] This Court has recognized that Congress, when defining the rights of servicemembers, was not limited to the minimum requirements established by the Constitution, and in many instances provided safeguards unparalleled in the civilian sector. United States v. McGraner, 13 M.J. 408, 414 (C.M.A. 1982). The appellate rights afforded to servicemembers is but one example where Congress has provided greater rights than found in the civilian sector.

counsel.  This argument first assumes that Petitioner has the resources to retain a civilian counsel, which he has asserted that he does not.  It further assumes that there are two standards in military justice – a standard for detailed military counsel and a standard for privately retained civilian counsel – and that the standards for the military counsel are lower than what is expected of a civilian counsel.  In fact, the standards for representation of servicemembers by military or civilian counsel in military appellate proceedings are identical.

3.  The Government argues that the length of time it takes detailed military appellate defense counsel to perfect an appeal should not be compared to public defenders in the public sector.  The duty of diligent representation owed by detailed military counsel to servicemembers is no less than the duty of public defenders to indigent civilians.  Courts have not hesitated to take action when public defender programs fail to represent their clients in a timely manner.  See, e.g., Harris, 15 F.3d at 1538; Green, 917 F. Supp. at 1238; In re Order On Prosecution of Criminal Appeals by the Tenth Judicial Circuit Public Defender, 561 So.2d 1130 (Fla. 1990)(per curiam).  The military appellate courts should be no

14

less diligent in protecting the rights of convicted servicemembers.

4. The Government argues that the military justice system requires that a "vast number" of court-martial cases be reviewed regardless of whether the servicemember files a notice of appeal, and that as a result the appellate process in the military necessarily takes longer than in the civilian justice system. In making this argument, the Government does not give appropriate consideration to the "awesome, plenary, de novo" nature of the review by the Courts of Criminal Appeals under Article 66. United States v. Cole, 31 M.J. 270, 272 (C.M.A. 1990). Unlike the civilian criminal justice system, the Courts of Criminal Appeals have unique fact finding authority, and that aspect of a servicemember's case is not concluded until that review is completed. The nature of this review calls for, if anything, even greater diligence and timeliness than is found in the civilian system.

5. The Government argues that the "institutional vigilance" present in this and other cases ensures that there can be no due process violations. In making this argument, the Government asserts that Petitioner's first appellate defense counsel worked diligently,

prioritized her cases, was available to Petitioner and guaranteed his access to appellate courts. The fact remains, however, that after February 28, 2002, through ten enlargements of time, Petitioner's first appellate defense counsel did not look at the substance of Petitioner's case and did not know when she would be able to do so. The appointment of a new appellate defense counsel did not rectify this problem, because that attorney concedes that he will not be able to look at the case in the foreseeable future. We reject any suggestion that "institutional vigilance" is evident in this case or that vigilance has been applied to ensure that Petitioner receives the rights he is entitled to under Article 66 and Article 70.

6. The Government argues that Petitioner cannot establish "prejudice" from the delays, but its argument is circular. It is disingenuous for the Government to argue that Petitioner has not made a "colorable claim of any possibility of relief," when the system that the Government controls has to date deprived Petitioner of the timely assistance of counsel that would enable him to perfect and refine the legal issues he has asserted.

Given the current posture of Petitioner's case as outlined above, Petitioner is not being afforded an appellate review of his findings and sentence that comports with the requirements of Article 66 and Article 70. These rights must be recognized, enforced and protected by the Government, by the appellate attorneys, by the Court of Criminal Appeals, and by this Court.

We reject any suggestion that continued delay or less diligence in completing appellate review of a criminal conviction should be tolerated under the UCMJ. We are confident that the right to a timely appellate review in the military justice system is no less important and no less a protection than its counterpart in the civilian criminal justice system. As noted, we reject any suggestion that institutional vigilance is evident in Petitioner's case. The Government's general proposition that "so far" there is no showing of excessive or inordinate delay warranting remedial action by this Court is not accurate. Instead, Petitioner's case illustrates that nothing has been done "so far" to respect or ensure Petitioner's right to timely review of his findings and sentence.

We are therefore returning this case to the Navy-Marine Corps Court of Criminal Appeals, as it is that court which is directly responsible for exercising "institutional vigilance" over this and all other cases pending Article 66 review within the Navy-Marine Corps Appellate Review Activity.

<u>Diaz v. The Judge Advocate General of the Navy</u>, No. 03-8014/NA

<u>Decision and Order</u>

The Petition for Extraordinary Relief is granted as follows:

1. This case is remanded to the Navy-Marine Corps Court of Criminal Appeals. That court shall expeditiously review the processing and status of Petitioner's Article 66 appeal.

2. The Court of Criminal Appeals shall take appropriate action to ensure that Petitioner receives the rights he is entitled to under Article 66 and Article 70, and issue such orders as are necessary to ensure timely filing of an Assignment of Errors and Brief on behalf of Petitioner and the timely filing of an Answer to the Assignment of Errors on behalf of the Government.

3. It is further directed that within 60 days of the date of this opinion, the Navy-Marine Corps Court of Criminal Appeals shall submit a report to this Court which specifies the steps taken to comply with the provisions of this opinion in regard to Petitioner and other appellants awaiting appellate review under Article 66 before the Navy-Marine Corps Court of Criminal Appeals.

4.    This order is entered without prejudice to Petitioner's right to assert a violation of his statutory and constitutional rights to speedy appellate review in the ordinary course of appeal.