IN THE CASE OF

UNITED STATES, Appellee

v.

Aaron A. OESTMANN, Aviation Support Equipment Technician Airman
U.S. Navy, Appellant

No. 04-0723

Crim. App. No. 200301443

United States Court of Appeals for the Armed Forces

Argued March 2, 2005

Decided May 10, 2005

EFFRON, J., delivered the opinion of the Court, in which
GIERKE, C.J., and CRAWFORD and BAKER, JJ., joined. ERDMANN, J.,
filed a separate opinion concurring in part and dissenting in
part.

Counsel

For Appellant: Lieutenant Stephen C. Reyes, JAGC, USNR
(argued); Commander Michael Wentworth, JAGC, USNR (on
brief); Lieutenant Colin A. Kisor, JAGC, USNR.

For Appellee: Major Raymond E. Beal II, USMC (argued);
Commander Charles N. Purnell, JAGC, USN (on brief); Colonel
William K. Lietzau, USMC.

Military Judge: B. W. MacKenzie

THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION.

United States v. Oestmann, No. 04-0723/NA

Judge EFFRON delivered the opinion of the Court.

On December 10, 2001, Appellant was convicted and sentenced at a general court-martial convened by the Commanding Officer of the U.S. Naval Support Activity in Naples, Italy. The court-martial, composed of a military judge sitting alone, convicted Appellant, pursuant to his pleas, of an absence offense and various drug-related offenses in violation of Articles 81, 86, 92, and 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 881, 886, 892, and 912a (2000), respectively. The adjudged sentence included a bad-conduct discharge, confinement for twelve months, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade.

Within six weeks after completion of trial, the military judge authenticated the eighty-two-page record. A month later, on February 26, 2002, the convening authority approved the sentence and directed that the record of trial be forwarded to the Navy-Marine Corps Appellate Review Activity in Washington, D.C.

The case was marked as received in Washington on July 22, 2003, reflecting a delay of 511 days. In proceedings before the United States Navy-Marine Corps Court of Criminal Appeals, Appellant raised a number of issues, including failure to provide timely review. The court declined to provide any relief based upon the timeliness issue, but modified two of the

United States v. Oestmann, No. 04-0723/NA

findings and reassessed the sentence on other grounds.  United States v. Oestmann, 60 M.J. 660, aff'd and supplemented upon reconsideration, 60 M.J. 660, 664 (N-M. Ct. Crim. App. 2004). As a result of the modified findings, the court reassessed the sentence.  Upon reassessment, the court modified the sentence to include confinement for nine months and approved the balance of the sentence.  Id. at 666.

The present appeal concerns Appellant's right to timely appellate review.  See United States v. Toohey, 60 M.J. 100 (C.A.A.F. 2003); Diaz v. The Judge Advocate General of the Navy, 59 M.J. 34 (C.A.A.F. 2003); United States v. Tardif, 57 M.J. 219 (C.A.A.F. 2002); United States v. Jones, ___ M.J. ___ (C.A.A.F. May 10, 2005).

In the course of addressing the issue of timeliness, the court below said: "The appellant, who did not raise the issue before the convening authority acted, has not shown that the delay was unreasonable."  60 M.J. at 664.  The timeliness issue in the present case, however, does not involve the period preceding the convening authority's action on the case.  Here, the convening authority fulfilled his discretionary responsibility and acted on the case seventy-eight days after the sentence was adjudged.  The issue in this case involves the period after the convening authority acted -- the unexplained and unusual period of more than one year and five months to

3

accomplish the routine, nondiscretionary, ministerial task of transmitting the record from the convening authority to the Navy-Marine Corps Appellate Review Activity.  Because the court below did not focus on the relevant period of delay, we decline to rely on the court's conclusion that relief would not be warranted for unreasonable and unexplained delay in this case.

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed as to the findings and set aside as to the sentence.  The record is returned to the Judge Advocate General of the Navy for remand to the Court of Criminal Appeals for review of the sentence under Toohey, Diaz, Tardif, and Jones.  Thereafter, Article 67, UCMJ, 10 U.S.C. § 867 (2000), will apply.

United States v. Oestmann, No. 04-0723/NA

ERDMANN, J. (concurring in part and dissenting in part):

I agree with the conclusion of the majority that the Navy-Marine Corps Court of Criminal Appeals erred by focusing upon the absence of an objection to this delay to the convening authority. With respect to the remedy, I would address the legal error here, de novo, without returning this case to the Court of Criminal Appeals for further review. United States v. Cooper, 58 M.J. 54, 58 (C.A.A.F. 2003). The post-action delay in shipping this eighty-two-page record of trial to the Navy-Marine Corps Appellate Review Activity was unreasonable, unexplained, and so lengthy as to warrant an inference of prejudice to Oestmann's rights and therefore violates his due process rights to a speedy appellate review. I would reverse the decision of the Court of Criminal Appeals and set aside the findings and sentence.

The Government did not offer a defense or explanation for this 511-day delay. When queried during oral argument, the Government acknowledged that the only task required to get the record to the appellate review activity was the ministerial act of boxing it up and mailing it. Although there are other tasks such as preparation of the promulgating order and completion of form checklists, all tasks associated with forwarding the record are routine.

See, e.g., Rules for Courts-Martial 1111 and 1114. These tasks require no discretion and they should take a matter of days, not seventeen months. Even in an extraordinary case, completion of these routine tasks should take no longer than thirty days.

This court abandoned the so-called "draconian" ninety-day rules of United States v. Burton, 21 C.M.A. 112, 44 C.M.R. 166 (1971), and Dunlap v. Convening Authority, 23 C.M.A. 135, 48 C.M.R. 751 (1974), in part, based upon our confidence that the system would maintain its dedication to speedy disposition and post-trial processing of courts-martial. See United States v. Kossman, 38 M.J. 258, 261 (C.M.A. 1993); United States v. Banks, 7 M.J. 92, 93 (C.M.A. 1979). Unfortunately, Oestmann's case and others reviewed by this court demonstrate that our confidence in continued timely post-trial processing and appellate review may have been misplaced. See United States v. Jones, ___ M.J. ___ (C.A.A.F. May 10, 2005); Rodriguez-Rivera v. United States and The Judge Advocate General of the Navy, ___ M.J. ___, Misc. No. 05-8007/NA (C.A.A.F. Feb. 17, 2005); United States v. Toohey, 60 M.J. 100 (C.A.A.F. 2003); Diaz v. The Judge Advocate General of the Navy, 59 M.J. 34 (C.A.A.F. 2003); United States v. Tardif, 57 M.J. 219 (C.A.A.F. 2002). Post-trial processing times have

risen dramatically since our decision in Banks.  This rise
is all the more alarming when measured against a relatively
low number of cases tried in recent years.

   While I am not opposed to again considering draconian
rules to protect the due process rights of servicemembers
convicted by courts-martial should we continue to see
unreasonable post-trial delays, this case does not require
such a drastic remedy.  Four factors are considered to
determine whether an appellate delay violates an
appellant's due process rights:  "(1) length of the delay;
(2) reasons for the delay; (3) the appellant's assertion of
his right to a timely appeal; and (4) prejudice to the
appellant."  Toohey, 60 M.J. at 102; Barker v. Wingo, 407
U.S. 514, 530 (1972).  After applying that four-part due
process test to these facts, I find a due process
violation.

   (1)   Length of Delay

   The length-of-delay factor "is actually a double
   enquiry."  Doggett v. United States, 505 U.S. 647,
   651, 120 L.Ed. 2d 520, 112 S. Ct. 2686 (1992).  First,
   the "length of the delay is to some extent a
   triggering mechanism," and unless there is a period of
   delay that appears, on its face, to be unreasonable
   under the circumstances, "there is no necessity for
   inquiry into the other factors that go into the
   balance."  Barker, 407 U.S. at 530.  Second, if the
   constitutional inquiry has been triggered, the length
   of delay is itself balanced with the other factors and
   may, in extreme circumstances, give rise to a strong

United States v. Oestmann, No. 04-0723/NA

> "presumption of evidentiary prejudice" affecting the
> fourth Barker factor.  Doggett, 505 U.S. at 655-57.

United States v. Smith, 94 F.3d 204, 209 (6th Cir. 1996).

The 511-day delay to ship the record of trial is excessive and unreasonable on its face, therefore triggering the constitutional inquiry.  As noted, the Government acknowledged that the only task required to get the record to the appellate review activity was the ministerial act of boxing it up and mailing it.  This factor weighs heavily in favor of Oestmann.

(2)    Reason for Delay

The Government did not give any reason for the delay. See United States v. Dunbar, 31 M.J. 70, 73 (C.M.A. 1990) (delay in forwarding a record of trial to the Court of Criminal Appeals is "the least defensible of all" post-trial delays).  This factor weighs heavily in favor of Oestmann.

(3)    Oestmann's Assertion of the Right

Oestmann did not assert his right to a speedy forwarding of the record.  Normally a lack of action would weigh against Oestmann.  But after action is taken by the convening authority and before a case is docketed at the Court of Criminal Appeals, a convicted servicemember has virtually no forum in which to complain about delay in

4

forwarding the record. While trial defense counsel has an obligation to continue representation, see United States v. Palenius, 2 M.J. 86 (C.M.A. 1977), after a client is transferred to serve confinement and action has been taken by the convening authority, trial defense counsel has little further involvement. The Government recognized this representational void at oral argument when it suggested that Oestmann should have complained of the delay to his commanding officer, a chaplain or his congressman. None of these individuals has direct responsibility for timely processing of cases in the military justice appellate system.[1] Because servicemembers in Oestmann's position are in a representational void in the period between the convening authority's action and the docketing of a case for appeal, I do not weigh the absence of an assertion of the right to timely appellate review against Oestmann.

    (4)   Prejudice

    To establish prejudice, Oestmann argues that he was denied a meaningful opportunity for relief in that the Court of Criminal Appeals' decision reducing his sentence had no practical effect because of the delay. The

---

[1] The fact that the Government views a congressional complaint as an appropriate avenue for a servicemember to pursue when confronted with post-trial delay merely demonstrates that the current system is flawed.

Government counters that there is no prejudice because even without this delay the Navy-Marine Corps court would not have ruled before Oestmann was released from incarceration. While I question the wisdom of the Government in arguing that the normal delay at the lower court is so extreme that even without this additional 511-day delay, that court would not have ruled on Oestmann's appeal before he was released from incarceration, I need not resolve that dispute to find prejudice here.

The Supreme Court found that "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." Doggett v. United States, 505 U.S. 647, 656 (1992).[2] The Sixth Circuit further explained this "presumptive prejudice" element in Smith: "any 'excessive delay' -- that is, any delay triggering the Barker analysis -- will generally give rise to a presumption of prejudice, and the only question is how much 'importance' to assign to

---

[2] While Doggett dealt with a speedy trial delay, circuit courts have split on whether its rationale is applicable to appellate delays as well. Accord Smith; Taylor v. Hargett, 27 F.3d 483, 486 (10th Cir. 1994). Contra United States v. Mohawk, 20 F.3d 1480, 1488 (9th Cir. 1994); Elcock v. Henderson, 28 F.3d 276, 279 (2d Cir. 1994). This court adopted the Barker four-part analysis with respect to post-trial speedy disposition claims, and I would include in that analysis the Doggett presumption of prejudice in those instances where delay is excessive.

6

that prejudice." 94 F.3d at 212. See also Toohey, 60 M.J. at 102. Here, an indefensible 511-day delay in transmitting an eighty-two-page record of trial requires that substantial weight be assigned to the presumptive prejudice. The Government did not overcome the presumption.

Any delay that reflects a disregard for the rights of convicted servicemembers is troublesome. Delays between the court-martial and review by the Courts of Criminal Appeals are particularly egregious. Review at a Court of Criminal Appeals "involves a fresh, impartial look at the evidence, giving no deference to the decision of the trial court on factual sufficiency beyond the admonition in Article 66(c), UCMJ, to take into account the fact that the trial court saw and heard the witnesses." United States v. Washington, 57 M.J. 394, 399 (C.A.A.F. 2002). In that same context we have noted that "the Courts of Criminal Appeals have unique fact finding authority, and that aspect of a servicemember's case is not concluded until that review is completed." Diaz, 59 M.J. at 39. The same can be said of the sentence in light of the Court of Criminal Appeals' responsibility to independently assure an appropriate sentence. The neglect and indifference reflected here not only violate a servicemember's constitutional right to

7

speedy appellate review, they also erode servicemembers' confidence in the military justice system as well as the public's perception of fairness in the system.

The unique nature of review under Article 66(c) "calls for, if anything, even greater diligence and timeliness than is found in the civilian system." Diaz, 59 M.J. at 39. Therefore, I would reverse the decision of the Court of Criminal Appeals and set aside the findings and sentence.