# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39323 (rem)**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Jordan R. MULLER**
Airman First Class (E-3), U.S. Air Force, *Appellant*

————————————

On Remand from

The United States Court of Appeals for the Armed Forces

Decided 16 August 2021

————————————

*Military Judge*: Andrew Kalavanos.

*Approved sentence*: Bad-conduct discharge, confinement for 9 months, and reduction to E-1. Sentence adjudged 2 June 2017 by GCM convened at Vandenberg Air Force Base, California.

*For Appellant*: Mark C. Bruegger, Esquire.

*For Appellee*: Lieutenant Colonel Brian C. Mason, USAF; Lieutenant Colonel Matthew J. Neil, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, LEWIS, and POSCH, *Appellate Military Judges*.

Senior Judge POSCH delivered the opinion of the court, in which Chief Judge JOHNSON and Senior Judge LEWIS joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

POSCH, Senior Judge:

A general court-martial composed of a military judge sitting alone convicted Appellant, in accordance with a pretrial agreement (PTA), of using 3,4-

methylenedioxymethamphetamine (commonly known as ecstasy), and use and distribution of cocaine in violation of Article 112a, UCMJ, 10 U.S.C. § 912a.[1] Based on Appellant's pleas of guilty, the maximum punishment was a dishonorable discharge, confinement for 25 years, forfeiture of all pay and allowances, reduction to the grade of E-1, and a reprimand. In exchange for Appellant pleading guilty as charged, the convening authority agreed, as a term of the PTA, to limit the confinement to 15 months. Ultimately, however, this limitation was of no consequence. Appellant's adjudged and approved sentence consisted of a bad-conduct discharge, confinement for nine months, and reduction to the grade of E-1.

Appellant's case is before this court a second time. In his initial appeal, on 16 May 2018 Appellant submitted his case on its merits with no assignment of error. However, on 12 September 2018, this court issued a Show Cause Order because a sentencing exhibit, Prosecution Exhibit 7, was missing from the record of trial. Exercising the court's independent responsibility to review the record of trial under Article 66(c), UCMJ, 10 U.S.C. § 866(c), the court returned Appellant's record for correction because that exhibit was missing.

After this court returned the record, the military judge signed a certificate of correction, and the record, now complete, was again docketed with the court. Appellant then moved for leave to file two supplemental assignments of error. First, Appellant claimed unlawful command influence (UCI) in the manner by which the Government corrected the record. Second, Appellant claimed prejudice for the time it took the Government to obtain the certificate of correction from the military judge.

On the same day this court affirmed the findings of guilty and the sentence, *United States v. Muller*, No. ACM 39323, 2018 CCA LEXIS 574 (A.F. Ct. Crim. App. 21 Dec. 2018) (per curiam) (unpub. op.), the court summarily denied Appellant's motion for leave to file the two supplemental assignments of error. Appellant moved this court to reconsider its denial, with a suggestion for *en banc* consideration, and the court on 28 January 2019 denied this motion. However, on 12 February 2020, the United States Court of Appeals for the Armed Forces (CAAF) reversed our judgment that affirmed the findings and sentence. *United States v. Muller*, 79 M.J. 359, 361 (C.A.A.F. 2020) (per curiam). The CAAF concluded that it could not determine whether the court's denial of Appellant's motion was based on an invalid rule of procedure of the court, or some other basis, and remanded the case for a new review of Appellant's court-martial under Article 66(c), UCMJ. *Id.*

---

[1] All references to the Uniform Code of Military Justice (UCMJ) and Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2016 ed.).

Today's decision by a reconstituted three-judge panel of the court is that review. On remand, Appellant raised three issues. Two of the issues essentially restate concerns he raised in the motion that this court denied during initial review. Following the CAAF remand, we address both issues and a third issue raised by Appellant for the first time. In this appeal, Appellant asks (1) whether the Government's delay in processing a certificate of correction warrants sentence relief; (2) whether the convening authority engaged in UCI when he directed the military judge to verify that a document purporting to be Prosecution Exhibit 7, which was missing from the record of trial, was the same Prosecution Exhibit 7 that the military judge reviewed at trial; and (3) whether Appellant's sentence is inappropriately severe.[2]

Finding no error materially prejudicial to Appellant's substantial rights, and following this court's Article 66(c), UCMJ, mandate to affirm only so much of the findings and the sentence as we find, on the basis of the entire record, should be approved, we affirm the findings and the sentence.

## I. BACKGROUND

### A. Trial and Sentencing

At trial on 2 June 2017, Appellant pleaded guilty to the use of ecstasy and cocaine. As a condition to the military judge accepting his pleas, Appellant answered the military judge's questions to ensure his pleas were provident. He described ingesting a pill he received from another Airman that Appellant knew was ecstasy. Appellant "asked for the drug by name" and the pill he received looked like the brand he saw on an Internet website. After swallowing the pill, he "felt euphoric, dehydrated and in no pain."

Appellant estimated he used cocaine approximately 15 times between 1 May 2016 and 20 January 2017. Usually Appellant used cocaine with two Airmen who were his friends, but he used it with other members of his squadron as well. One of the earliest times Appellant used cocaine was with a non-commissioned officer (NCO) senior to Appellant who showed him how to snort cocaine powder off a credit card. Appellant described two times that he used cocaine on Vandenberg Air Force Base (AFB), California, where he was assigned. On one occasion he used it with other Airmen in an on-base house where a friend was having a party. Appellant used it by snorting "a line" they had set up for him on a plate, and the effects he felt were "instant." On a second occasion, he snorted "a line" with other Airmen in a recreational room near one of the dorms. Appellant also used the drug in his off-base apartment, in bars,

---

[2] Appellant raises issues (2) and (3), which we reordered, pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

and in a hotel in Lompoc, California. Appellant also used the drug in nearby Santa Maria and San Luis Obispo, California.

During the same period he used cocaine, Appellant admitted he distributed the drug to his friends on approximately five occasions. Appellant explained he would purchase cocaine from his dealer to share it with friends at his apartment. Appellant said he put lines on a plate and they would pay Appellant for their share and settle what they owed Appellant amongst themselves. Two of the friends to whom Appellant gave cocaine under these circumstances were Airmen.

During sentencing, the Government presented Appellant's AF Form 910, *Enlisted Performance Report* (EPR), for the period 10 November 2014 through 9 July 2016. In addition, the Government presented evidence it used to argue Appellant's lack of rehabilitative potential. In August 2016, Appellant received a letter of reprimand following his arrest for public intoxication. In October 2016, Appellant was again arrested for public intoxication and later found guilty in state court of public intoxication and resisting a public officer. Appellant's First Sergeant testified he interacted with Appellant approximately two to three times per week, and offered his opinion that Appellant's rehabilitation potential was "low." Appellant's sentencing case consisted of testimony from his mother and father, character letters from his family, and his own oral and written unsworn statements.

## B. Procedural History on Appeal

After the court-martial adjourned, Appellant's case was initially docketed with this court on 18 September 2017. On 16 May 2018, Appellant submitted his appeal on the merits without any assignment of error. About four months later, in September 2018, while conducting its review under Article 66(c), UCMJ, the originally constituted three-judge panel of this court discovered that Appellant's only EPR, Prosecution Exhibit 7, was plainly absent from the original record of trial as authenticated by the military judge who presided at the court-martial. Judging from the verbatim transcript of the proceedings, the EPR had been offered by the Prosecution and admitted in evidence during its sentencing case. On 12 September 2018, this court issued an order for the Government to show good cause why the record should not be returned to the convening authority for correction under Rule for Courts-Martial (R.C.M.) 1104(d) because the record was incomplete. We further ordered the Government to do so not later than 26 September 2018.

On that date, the Government responded with a motion to attach an EPR that, before trial, Appellant's First Sergeant had "Certified" as a "True Copy," along with an accompanying post-trial declaration from the trial counsel who was detailed to Appellant's case explaining that the EPR was identical to the

one that the military judge had admitted in evidence. The trial counsel said she was "extremely confident" the EPR attached to her declaration was the same as the missing exhibit. At the same time, appellate counsel for the Government argued this court did not need to return the record to the convening authority because granting its motion would make the record complete.

This court declined the Government's suggestion and, on 5 October 2018, denied the Government's motion to attach and ordered the record be returned for correction. The order cited R.C.M. 1104(d) and the provisions of that rule for the military judge to produce and then authenticate a certificate of correction. The court's order further directed the Government to return the corrected record to the court no later than 4 November 2018.

The Government moved for a 14-day enlargement filed out of time on 1 November 2018 because it needed more time to comply. The Government explained that "[t]he convening authority's servicing legal office and the military judge have been diligently taking steps to comply with this Court's [5 October 2018] order." The Government related that "the military judge sent a draft certificate of correction to counsel with a deadline of 2 November 2018 to respond. However, the certificate of correction may not be completed in time to return the record to this Court by 4 November 2018."

This court granted the Government's motion over Appellant's opposition and set 18 November 2018 as the date when the corrected record of trial would be returned to this court. Meanwhile, and apparently around the same time as the military judge was circulating his proposed certificate of correction among the counsel for both parties, on 30 October 2018 the convening authority issued a memorandum to the military judge that "direct[ed]" him to prepare a certificate of correction:

> By appellate court order, I direct you to prepare a Certificate of Correction that identifies Prosecution Exhibit 7, described in the Exhibit List as an "Enlisted Performance Report, dated 10 November 2014 to 9 July 2016" and it's [sic] inclusion in the record of trial. You are to verify that this exhibit is what you reviewed as the military judge in U.S. v. Muller.

Nonetheless, the Government again missed the court's deadline. On 26 November 2018, the Government moved—out of time—to attach a certificate of

correction.[3] On 30 November 2018, we granted the motion and Appellant's record of trial—with the exhibit that was missing now part of the record—was again docketed with the court.[4] The certificate of correction attached to the Government's motion to attach is dated 2 November 2018, and the postal receipt shows delivery to Appellant on 5 November 2018. The Government did not detail the actions it took between Appellant's receipt of the corrected record and its motion to attach.

One week after Appellant's case was re-docketed with this court, Appellant's military appellate defense counsel filed a pleading on Appellant's behalf. In that pleading, Appellant separately alleged two claims of prejudicial error arising from the correction process.[5]

The Government did not file a response to this pleading, and, on 21 December 2018, we summarily denied Appellant's motions, thereby declining to address his supplemental assignments of error. At the same time, we issued our decision affirming the findings and sentence. *Muller*, unpub. op. at *1. When this court issued its opinion, fewer than 18 months had elapsed after Appellant's case was originally docketed with this court on 18 September 2017. All told, Appellant took 241 days to file his merits brief, and the Government took 52 days to comply with this court's order.

## II. DISCUSSION

### A. Timeliness of Post-Trial Processing

In his first assignment of error, Appellant claims prejudice from delay caused by the Government's failure to provide a complete record of trial when it was initially docketed with this court. As a remedy, Appellant asks this court to order appropriate sentence relief. We find the Government did not deprive Appellant of his due process right to speedy post-trial and appellate review or that he has shown prejudice, and, thus, decline Appellant's request for relief.

---

[3] The Government initially submitted the certificate of correction in a motion to attach on 21 November 2018, but did not identify that the motion was filed out of time. This court denied that motion on 30 November 2018.

[4] We granted the Government's motion to attach over Appellant's opposition that the Government failed to demonstrate good cause for its out-of-time filing.

[5] Appellant raised both issues in a 6 December 2018 motion for leave to file supplemental assignments of error that was supported by a personal declaration in a 10 December 2018 motion to attach. On 21 December 2018, this court denied both motions.

### 1. Additional Background

In three post-trial declarations attached to the appellate record, Appellant claims he has demonstrated prejudice from the delay. The first declaration, by Appellant, claims the Government's dilatory conduct will contribute to the delayed issuance of a DD Form 214. Appellant explains that, as a result, he was denied employment opportunities because he did not have a DD Form 214. Even after he was "finally able to get a job in May 2018," he is "constantly worried that if anything happens, such as getting laid off due to the [COVID-19] pandemic, [he] will be unable to find other employment without [a] DD Form 214." The second and third declarations were made by Appellant's mother and girlfriend, which lend support to Appellant's declaration.

### 2. Law

"[C]onvicted servicemembers have a due process right to timely review and appeal of courts-martial convictions." *United States v. Moreno*, 63 M.J. 129, 136 (C.A.A.F. 2006) (citing *Toohey v. United States*, 60 M.J. 100, 101 (C.A.A.F. 2004); *Diaz v. Judge Advocate General of the Navy*, 59 M.J. 34, 37–38 (C.A.A.F. 2003)). We review de novo whether an appellant has been denied this right. *Id.* at 135 (citations omitted).

In *Moreno*, our superior court's holding quantified the threshold for a presumptive due process violation that it measured in days and months when any of the following occur: (1) the convening authority takes action more than 120 days after completion of trial; (2) the record of trial is docketed by the service Court of Criminal Appeals (CCA) more than 30 days after the convening authority's action; or (3) a CCA completes appellate review and renders its decision over 18 months after the case is docketed with the court. *Id.* at 142.

When a case does not meet one of these standards, the delay is presumptively unreasonable and it triggers an analysis of the four non-exclusive factors laid out in *Barker*: "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135 (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)) (other citations omitted). These factors are used to assess whether an appellant's due process right to timely post-trial and appellate review has been violated. *Id.*

"Once this due process analysis is triggered by a facially unreasonable delay, the four factors are balanced, with no single factor being required to find that post-trial delay constitutes a due process violation." *Id.* at 136 (citing *Barker*, 407 U.S. at 533 (other citation omitted)). The CAAF found it "important to note that the presumptions [of facially unreasonable delay] serve to trigger the four-part *Barker* analysis—not resolve it. The Government can rebut the presumption by showing the delay was not unreasonable." *Id.* at 142.

However, where there is no qualifying prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). In *Moreno*, the CAAF identified three interests protected by an appellant's due process right to timely post-trial review: (1) preventing oppressive incarceration; (2) minimizing anxiety and concern; and (3) avoiding impairment of the appellant's grounds for appeal and ability to present a defense at a rehearing. 63 M.J. at 138–39 (citations omitted).

### 3. Analysis

The Government timely docketed Appellant's record of trial with this court. However, the record that it did submit was initially incomplete, thus raising a question whether the Government complied with the 30-day *Moreno* standard, which requires us to find facially unreasonable delay when a record of trial is docketed more than 30 days after action by the convening authority. Notionally, this *Moreno* standard may be open to two possible interpretations. Under the first and more likely interpretation, the Government categorically complied with the 30-day *Moreno* standard because the CAAF has not articulated that a record must be complete to forestall a presumption of post-trial delay. Under an alternative reading, a record is not docketed *de jure* with the court until the Government dockets a complete record of trial.

In the case under review, we believe that the first interpretation is correct. The failure of Government personnel to include Appellant's EPR, admitted as a prosecution exhibit, was not shown to be anything other than simple negligence. The record yields no reason to believe the omission was intentional, much less deliberate. *Cf. United States v. Bavender*, No. ACM 39390, 2019 CCA LEXIS 340, at *67, *68 n.28 (A.F. Ct. Crim. App. 23 Aug. 2019) (unpub. op.) (where the Government docketed "[a] plainly deficient record" deliberately omitting evidence on which it relied to convict). Appellant does not claim the Government erred in failing to meet the 30-day *Moreno* standard, and we believe a finding that there was no facially unreasonable delay, in this regard, is correct.

We turn then to consider Appellant's claim that the Government took 52 days to comply with this court's order (and that it took 75 days after the Government was notified of the missing exhibit to do so). Appellant makes no claim that this delay violated *Moreno*, and the Government maintains there is no legal standard governing how long it should take to complete a certificate of correction. We agree with the Government that Appellant has not demonstrated a presumption of unreasonable delay under an identified legal standard. We note that even with the 52 days it took the Government to return the record of trial to the court, in compliance with *Moreno*, appellate review was

completed, and an initial decision rendered, well within 18 months after Appellant's case was first docketed with the court. Under the totality of the circumstances, Appellant has not shown facially unreasonable delay that would trigger an analysis of the four non-exclusive factors laid out in *Barker*. *Moreno*, 63 M.J. at 135 (citing *Barker*, 407 U.S. at 530) (other citations omitted)).

Even if we assume for purposes of this appeal only that there was facially unreasonable delay during part of the time Appellant's case was docketed with this court, we would not find a violation of Appellant's due process right to speedy appellate review and grant relief. Our analysis of the *Barker* factors would not lead to a finding of error. The length of the delay does not favor Appellant because the 52 days it took the Government to comply with this court's order did not cause a presumption of unreasonable delay that our superior court established in *Moreno* or that was violative of another legal standard. Compared to the 460 days Appellant's case was on appeal, the 52 days is short. The reason for the delay, however, does favor Appellant. It seems suitable that the Government bears initial responsibility for causing delay when a reviewing authority directs a certificate of correction. This is because the Government has a responsibility to docket a complete record of trial with the court. *United States v. Lovely*, 73 M.J. 658, 675 (A.F. Ct. Crim. App. 2014) ("[I]t is the Government's responsibility to prepare the record of trial." (citing Article 38(a), UCMJ, 10 U.S.C. § 838)). We assume without deciding that Government personnel, and not the military judge, are accountable for the time it takes to return a record to the court. We are fairly at ease in making that assumption here because the appellate record does not yield reasons why we might exclude the time it took the military judge to comply with R.C.M. 1104(d).

Appellant claims his opposition to the Government's request for additional time to comply with the court's order should suffice to show that Appellant demanded his right to speedy appellate review. We disagree, and weigh this factor slightly in favor of the Government. We further note that even if Appellant's opposition to the motion was a demand for speedy appellate review, it would only slightly weigh in his favor because no *Moreno* standards were implicated in the post-trial and appellate review of his case. Finally, Appellant has not shown the Government's 52-day delay, and not other factors unrelated to the delay such as his convictions, is the cause of his claimed prejudice. Appellant's concern that he might lose his job and might not find work is not the type of anxiety beyond that normally experienced by any appellant waiting for the completion of appellate review. *See Moreno*, 63 M.J. at 138–41.

In the absence of prejudice cognizable under *Moreno*, we find the delay was not so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *Toohey*, 63 M.J. at 362. We also consider whether this is an appropriate case to exercise our authority to grant

relief under Article 66(c), UCMJ. Having considered the post-trial delay in light of the CAAF's guidance in *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002) (where Courts of Criminal Appeals retain the authority to grant sentence relief for unexplained and unreasonable post-trial delay even absent prejudice), we find the Government's conduct does not impact the sentence that "should be approved." *See* Article 66(c), UCMJ.

## B. Allegation of UCI

In his second issue, Appellant claims the convening authority committed actual and apparent UCI. Appellant contends the convening authority unlawfully directed the military judge to "verify" that a document purporting to be an EPR for Appellant was the same exhibit the military judge reviewed and admitted in evidence as Prosecution Exhibit 7 at Appellant's sentencing hearing. Appellant essentially repeats concerns he raised in the motion that this court denied when it was initially before the court, except Appellant now asks that we set aside the bad-conduct discharge, rather than order a different convening authority and legal office to manage any future attempts to correct the record, as he had initially requested. To resolve Appellant's second issue, we again rely on the procedural history of this case.

### 1. Law

The prohibition against UCI arises from Article 37(a), UCMJ, which provides in relevant part that:

> [n]o person subject to this chapter may attempt to coerce or, by any unauthorized means, influence the action of a court-martial or any other military tribunal or any member thereof, in reaching the findings or sentence in any case, or the action of any convening, approving, or reviewing authority with respect to his judicial acts.

10 U.S.C. § 837(a); *see also* R.C.M. 104(a)(2) (substituting "code" for "chapter," and "such authority's judicial acts" for "his judicial acts").

An appellate court reviews allegations of UCI de novo. *United States v. Barry*, 78 M.J. 70, 77 (C.A.A.F. 2018); *United States v. Salyer*, 72 M.J. 415, 423–24 (C.A.A.F. 2013) (reviewing "lower court's analysis, reasoning, and conclusion regarding the appearance of unlawful command influence" de novo). "Two types of unlawful command influence can arise in the military justice system: actual unlawful command influence and the appearance of unlawful command influence." *United States v. Boyce*, 76 M.J. 242, 247 (C.A.A.F. 2017). Actual UCI "is an improper manipulation of the criminal justice process which negatively affects the fair handling and/or disposition of a case." *Id.* (citations omitted). In order to demonstrate actual UCI, the appellant "must show: (1)

facts, which if true, constitute unlawful command influence; (2) that the proceedings were unfair; and (3) that the unlawful command influence was the cause of the unfairness." *Salyer*, 72 M.J. at 423 (citing *United States v. Richter*, 51 M.J. 213, 224 (C.A.A.F. 1999)). "[T]he initial burden of showing potential unlawful command influence is low, but is more than mere allegation or speculation." *Id.* (citing *United States v. Stoneman*, 57 M.J. 35, 41 (C.A.A.F. 2002)).

> Once an issue of unlawful command influence is raised by some evidence, the burden shifts to the government to rebut an allegation of unlawful command influence by persuading the Court beyond a reasonable doubt that (1) the predicate facts do not exist; (2) the facts do not constitute unlawful command influence; or (3) the unlawful command influence did not affect the findings or sentence.

*Id.* (citing *United States v. Biagase*, 50 M.J. 143, 151 (C.A.A.F. 1999)). The question whether the Government has met its burden of demonstrating, beyond a reasonable doubt, that court-martial proceedings were untainted by unlawful command influence is a question we review de novo. *United States v. Lewis*, 63 M.J. 405, 413 (C.A.A.F. 2006) (citations omitted).

Unlike actual UCI, a meritorious claim of an appearance of UCI does not require prejudice to an accused. *Boyce*, 76 M.J. at 248. "Instead, the prejudice is what is done to the 'public's perception of the fairness of the military justice system as a whole.'" *United States v. Proctor*, ___ M.J. ___, No. 20-0340, 2021 CAAF LEXIS 509, at *13 (C.A.A.F. 2 Jun. 2021) (quoting *id.*). As with actual UCI, "when an appellant asserts there was an appearance of unlawful command influence[,] [t]he appellant initially must show 'some evidence' that unlawful command influence occurred." *Boyce*, 76 M.J. at 249 (footnote omitted) (quoting *Stoneman*, 57 M.J. at 41) (additional citation omitted).

"Once an appellant presents 'some evidence' of unlawful command influence, the burden then shifts to the government to. . . . prov[e] beyond a reasonable doubt that either the predicate facts proffered by the appellant do not exist, or the facts as presented do not constitute unlawful command influence." *Id.* (quoting *Salyer*, 72 M.J. at 423) (additional citation omitted). If the Government fails to rebut the appellant's factual showing, it may still prevail against a claim of apparent UCI if it proves "beyond a reasonable doubt that the unlawful command influence did not place 'an intolerable strain' upon the public's perception of the military justice system and that 'an objective, disinterested observer, fully informed of all the facts and circumstances, would [*not*] harbor a significant doubt about the fairness of the proceeding.'" *Id.* at 249–50 (alteration in original) (quoting *Salyer*, 72 M.J. at 423).

### 2. Analysis

Appellant raises the specter of UCI during appellate review of his court-martial after this court remanded the record for correction. Appellant asserts that the language used by the convening authority did not give the military judge any discretion. Instead, he claims the convening authority required the military judge to verify that the document was the same as the exhibit that was omitted from the record of trial. By using such directive language, Appellant claims, the convening authority exerted actual UCI over the post-trial processing of the certificate of correction and his unlawful action warrants relief. In the alternative to this court determining that actual UCI tainted the proceedings, Appellant argues there is still an appearance of UCI. That is, an objective and disinterested observer would view the language of the convening authority's direction—and more specifically, its lack of any discretionary terms such as "*whether* the exhibit is what the military judge reviewed at trial"—as stripping the military judge of his independence. Appellant claims that a disinterested member of the public would question how the Government handled the record correction process and its overall fairness.

The Government disputes Appellant's claims of actual and apparent UCI. In its answer, the Government principally relies on the dissenting opinion by Judge Maggs in the CAAF decision that remanded Appellant's case to this court. *Muller*, 79 M.J. at 361–63 (Maggs, J., dissenting in the decision to remand to this court for a new review under Article 66(c), UCMJ). The Government counters, as Judge Maggs said in his dissenting opinion, that Appellant's "argument had no merit" when he claimed the convening authority unlawfully influenced the proceeding to correct the record. *Id.* at 362. The Government makes the point that the common meaning of the word "verify" does not suggest that the person doing the verifying has no discretion in his task or must reach a certain result. In this regard, Judge Maggs concluded,

> To be sure, in some contexts the verb "to verify" may mean "to swear to or affirm the truth of." *Merriam-Webster's Third International Dictionary of the English Language Unabridged* (2002) (entry for "verify"). But in other contexts the verb simply means "to check or test the accuracy or exactness of." *Id.* The context here shows that, when the convening authority ordered the military judge to "verify" the exhibit was the correct one, the convening authority was not directing the military judge to make a particular decision. An exhibit missing from the record needed to be added, and the convening authority was simply asking the military judge to confirm whether the transmitted exhibit was or was not the correct exhibit.

79 M.J. at 362–63 (Maggs, J., dissenting).

We agree with the Government that there is no indication in the convening authority's memorandum that the convening authority expected a certain result or that there would be consequences for not achieving that result. It bears observing that Appellant does not claim the corrected record is somehow incomplete or inaccurate as a consequence of the convening authority having directed the military judge to verify that the document was the same as the exhibit that was missing from the record. Not only is it the case that Appellant was not prejudiced by the convening authority's memorandum, his right to appellate review is unmistakably advanced by this court having the benefit of a complete record of trial to conduct its statutory review.

More to the point, we find Appellant has not demonstrated some evidence of facts, which if true, constitute UCI or that the proceedings to correct the record were unfair. *Salyer*, 72 M.J. at 423. We are similarly convinced the convening authority did not "attempt to coerce or, by any unauthorized means, influence the action of a court-martial . . . or any member thereof, in reaching the findings or sentence in any case, or the action of any convening, approving, or reviewing authority with respect to his judicial acts." Article 37(a), UCMJ. Appellant's claim "consists instead of speculative or conclusory observations," of unlawful conduct and undue influence and so "the claim may be rejected on that basis." *United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997). In this regard, we find no evidence of "an improper manipulation of the criminal justice process which negatively affect[ed] the fair handling and/or disposition of [Appellant's] case." *Boyce*, 76 M.J. at 247 (citing *United States v. Allen*, 33 M.J. 209, 212 (C.M.A. 1991)) (other citations omitted). We are also convinced beyond a reasonable doubt that the facts do not constitute UCI and that a fully informed, objective, disinterested observer would not harbor a significant doubt about the fairness of the proceeding. *Salyer*, 72 M.J. at 423. For these reasons, we decline to grant relief.

## C. Sentence Appropriateness

In his third issue, Appellant claims the circumstances surrounding his offenses do not warrant a sentence that includes a lifetime stigma of a punitive discharge.

### 1. Additional Background

While acknowledging some amount of punishment is appropriate, Appellant asks this court to carefully review the circumstances with the understanding of how incidents of childhood trauma affected his motivations and decision-making. To this end, Appellant draws our attention to the Defense's sentencing case and evidence of an abusive and dysfunctional upbringing. Appellant explains in this appeal that he internalized his childhood trauma and joined the Air Force in an attempt to escape his problems, but then turned to alcohol and

drugs as way to cope with his problems. Appellant also explains he was diagnosed with, and exhibited signs of, several mental health disorders, which he asks this court to consider in assessing sentence appropriateness.

### 2. Law

A CCA "may affirm only . . . the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." Article 66(c), UCMJ. "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (per curiam) (citations omitted). While we have great discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

### 3. Analysis

We have given individualized consideration to Appellant, the nature and seriousness of his offenses, his record of service, and all other matters contained in the record of trial. We consider these matters at the same time that we again consider that this court retains authority to grant sentence relief for unexplained and unreasonable post-trial delay even in the absence of prejudice. *Tardif*, 57 M.J. at 224.

In addition to matters in extenuation and mitigation, evidence at trial showed that Appellant's use and distribution of cocaine often involved other Airmen, and he twice used drugs with other Airmen on Vandenberg AFB. Appellant's adjudged sentence included nine months of confinement and a bad-conduct discharge compared to the maximum punishment of 25 years of confinement and a dishonorable discharge for these components. Understanding we have a statutory responsibility to affirm only so much of the sentence that is correct and should be approved, Article 66(c), UCMJ, we determine to affirm the adjudged sentence that was approved by the convening authority.

### III. CONCLUSION

The findings and sentence approved by the convening authority are correct in law and fact, and no error materially prejudicial to the substantial rights of

Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are **AFFIRMED**.[6]

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

---

[6] We again note that the convening authority's memorandum dated 20 June 2017, which denied Appellant's request for deferment of the reduction in rank and automatic forfeiture of pay, failed to articulate a reason for the denial as required by R.C.M. 1101(c)(3). However, Appellant claims no prejudice from this error. Even if we assume some colorable showing of possible prejudice is the standard for review, *see United States v. Muller*, No. ACM 39323, 2018 CCA LEXIS 574, at *1–2 (A.F. Ct. Crim. App. 21 Dec. 2018) (per curiam) (unpub. op.) (citing *United States v. Jalos*, No. ACM 39138, 2017 CCA LEXIS 607, at *6–7 (A.F. Ct. Crim. App. 5 Sep. 2017) (unpub. op.) (citations omitted)), we conclude no relief is warranted.